I ,ARMSTRONG, Judge.
This is a lender liability case. The plaintiffs allegedly obtained a house construction loan from the defendant bank. The bank allegedly engaged an inspector to monitor the progress of construction. Allegedly, before the completion of the construction, the bank instructed the inspector to cease monitoring the construction. Allegedly, there was a very large cost overrun on the construction, which resulted in financial distress to the borrowers, foreclosure proceedings by the bank, bankruptcy of the plaintiffs and a bankruptcy court-ordered sale of the house at a great financial loss to the plaintiffs. The plaintiffs allege that this cost overrun would not have occurred but for the bank’s cessation of the monitoring of construction.
The key issue in this case is whether the bank had an obligation to the plaintiffs to have the construction monitored. The bank contends that the allegations of plaintiffs’ petition as to that issue are inadequate to state a cause of action in light of La. R.S. 6:1121-23. Based upon that contention, the bank filed an exception of no cause of action. After twice allowing the plaintiffs to amend and supplement their petition, the trial court maintained that exception and ^dismissed. We find that the allegations of the plaintiffs’ petition as amended are inadequate to state a cause of action in light of La. R.S. 6:1121-28, and so we affirm.
Plaintiffs Byron J. Casey, III and Stephanie J. Johnson allege that they purchased an unimproved lot in New Orleans and, in connection with that purchase, executed a mortgage. The plaintiffs then allege that they entered into an agreement with a local contractor to build their house on the lot for a price of $335,000. The plaintiffs’ petition, as amended, then makes the following allegations:
5.
The petitioners presented a written loan application to Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank in order to secure a loan in the sum of $150,000.00 for the anticipated ultimate completion of construction as petitioners had anticipated employing their own funds during the initial stages of construction.
*935 5(a).
That subsequent to the date of the submission of their written loan application to Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank the said Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank executed a written loan commitment document approving petitioners’ written loan application.
6.
Construction of the improvements being made at 57 Dove Street, New Orleans, Louisiana, began in September of 1989.
7.
As per a provision of the terms of the loan, Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank ordered the Griffin Group to monitor the construction in question.
_jj8.
The Griffin Group monitored the construction thru December 4, 1989 at which time Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank instructed the Griffin Group to discontinue the monitoring of construction despite the fact that inconsistencies were observed in the cost of construction.
9.
The construction of the improvements at 57 Dove Street, New Orleans, Louisiana were completed in June of 1990. The cost of construction of the improvements to-talled some $515,000.00 rather than the contracted price of $335,000.00.
10.
Petitioners aver that the discrepancy in the cost of construction was caused by the negligence of Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank in failing to monitor the construction of the improvements.
11.
That as a result thereof, petitioners became delinquent in the payment of the loan to Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank. The bank in question instituted foreclosure proceedings necessitating the filing of bankruptcy proceedings to be filed by Byron J. Casey III in order to obtain a stay order halting the judicial sale of the referred to property.
12.
Petitioners’ residence located at 57 Dove Street, New Orleans, Louisiana, was placed on the real estate market for sale in order to comply with the orders of the U.S. Bankruptcy Court. The property was eventually sold in November of 1992 for the sum of $450,000.00. Petitioners realized the sum of $127,214.90 from the sale of the property after deducting from the purchase price the amount owed Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank. Petitioners sustained a loss of sum $513,000.00 from the forced sale of the referred to property.
J43.
Petitioners allege that Hibernia Corporation d/b/a Hibernia National Bank and/or Hibernia National Bank breached its contract with petitioners by failing to monitor the construction of the improvements being constructed at 57 Dove Street, New Orleans, Louisiana. Petitioners further allege that the breach caused the ultimate foreclosure of the said property and the sale thereof resulting in a net loss to the petitioners of $513,000.00
The above-quoted allegations are followed by allegations of special and general damages, and allegations of additional legal theories.
The cornerstone of the plaintiffs’ suit is their claim that Hibernia agreed to have an inspector monitor construction of their house and then ceased doing so. Hibernia argues that such an agreement to monitor construction can be actionable only if that agreement was in a signed writing. Specifically, Hibernia relies upon a statute, referred to in the *936 caselaw as the Louisiana Credit Agreement Statute (“LCA Statute”), which provides, in pertinent part: “A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and debtor.” La. R.S. 6:1122. See generally, Whitney National Bank v. Rockwell, 94-3049 (La.10/16/95), 661 So.2d 1325 (extensive discussion of LCA Statute); Fleming Irrigation v. Pioneer Bank & Trust, 27,262 (La.App.2d Cir. 8/23/95), 661 So.2d 1035, writ denied, 95-2357 (La.12/8/95), 664 So.2d 427; DiGioia, Whitney National Bank v. Rockwell: The Louisiana Supreme Court Enforces the Statute of Frauds for Credit Agreements, 70 Tul. L.Rev. 1739 (1996).
The plaintiffs argue first that we need not even consider the LCA Statute because some of the relevant events predate the statute and the statute is not |5retroactive. It has, indeed, been held that the LCA Statute is not retroactive. Trans-Global Alloy v. First Nat. Bank, 583 So.2d 443, 450 (La. 1991); Bryant v. Heritage Life Ins. Co., 613 So.2d 1044 (La.App. 3 Cir.1993). In Trans-Global and Bryant, all of the relevant events had occurred before the enactment of the LCA Statute. In fact, in Trans-Global, suit had been filed about four years before enactment of the LCA Statute.
In the present case, in contrast, the relevant events took place after the enactment of the LCA Statute although they had their origins in earlier events that predate the statute. Specifically, the plaintiffs allege that, on November 28, 1988, they purchased the lot for $125,000, executed a collateral mortgage on the lot, and received a $50,000 loan from Hibernia for part of the purchase price for the lot. The LCA Statute became effective September 3, 1989. Bryant v. Heritage Life Ins. Co., 613 So.2d at 1045 (citing 1989 Acts 531). The plaintiffs allege that, on October 20, 1989, they received a $150,000 construction loan from Hibernia which was secured by the collateral mortgage of November 28, 1988. They also allege that, later, they executed further notes to Hibernia which also were secured by the November 28, 1988 collateral mortgage. The plaintiffs also allege that Hibernia ceased the monitoring of construction of the plaintiffs’ home in December, 1989. The purchase of the lot, and the $50,000 loan for purchase of the lot, which predate the effective date of the LCA Statute, are not the source of the controversy in this case. Rather, it is the construction loan, and the cessation of construction monitoring, which post-date the effective date of the LCA Statute, which give rise to the plaintiffs’ claims. Thus, application of the LCA Statute in this case does not constitute retroactive application. The plaintiffs point out that the construction loan, in terms of priority of liens, relates back to the November 28, 1988 date of |6the collateral mortgage executed in conjunction with the $50,000 loan for the purchase of the lot. But, as the plaintiffs’ claims in this case have nothing to do with priority of liens, we do not see how that is relevant. The plaintiffs’ cause of action arises from transactions which postdate the effective date of the LCA Statute.
Turning now directly to the issue of whether the plaintiffs’ allegations are adequate to state a cause of action in light of the LCA Statute’s requirement of a signed writing, we are cognizant that we must treat those allegations as true. Vogt v. Board of Levee Com’rs., 95-1187 (La.App. 4 Cir. 9/4/96) 680 So.2d 149, 155, writ denied, 95-0779 (La.12/6/96), 684 So.2d 923. See also Landrum v. Board of Com’rs., 95-1591, (La.App. 4 Cir. 11/27/96), 685 So.2d 382, 388 (following Everything On Wheels v. Subaru South, 616 So.2d 1234, 1235 (La.1993)).
Despite two amendments, the petition does not allege any written, signed agreement obligating Hibernia to monitor construction of the house. Paragraph 7 of the petition as amended alleges that “[a]s per a provision of the terms of the loan” Hibernia had the construction monitored. However, there is no allegation that this “provision” is in writing much less any allegation identifying the specific document containing the alleged “provision.” Paragraphs 5 and 5(a) allege a written loan application and a written loan commitment but do not allege that those documents either separately or together contain any agreement obligating Hibernia to monitor the construction. It is incon *937 ceivable that the plaintiffs, who amended their petition twice in response to Hibernia’s exception, would not expressly allege a written agreement obligating Hibernia to monitor construction if any such written agreement existed.
RFor the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.