796 So.2d 176 (2001)
Patricia Lattier HOLMES, Plaintiff-Appellant,
v.
PEOPLES STATE BANK, Defendant-Appellee.
No. 35,072-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
Rehearing Denied October 25, 2001.
*178 Darien D. Lester, Shreveport, Counsel for Appellant.
John Clifton Conine, Natchitoches, Margaret L. Tooke, Baton Rouge, Counsel for Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
NORRIS, Chief Judge.
The plaintiff, Patricia Holmes, appeals a judgment that rejected all her claims against Peoples State Bank of Many ("PSB"), as well as a judgment holding her lawyer, Darien D. Lester, in contempt of court. We affirm.

Factual and procedural background
This suit arises from the construction of Ms. Holmes's "dream home" on Cross Lake in Shreveport. In August 1996 she obtained an interim construction loan of $294,000 from PSB. The loan was for 180 days and secured by a mortgage on the property. Because she wanted to use an unlicensed builder (her boyfriend, Larry Reed) as general contractor, PSB required her to obtain a performance bond of $295,000. Construction began and PSB made disbursals to Ms. Holmes or Reed. For various reasons that were hotly disputed at trial, construction lagged and PSB twice extended its interim commitment. On October 2, 1997 PSB funded the last of its original commitment and in November it loaned her an additional $4,841, secured by the pledge of Ms. Holmes's Lucent stock. However, the house was still not complete; for this reason, Ms. Holmes had not obtained permanent financing.
In December 1997 Ms. Holmes requested an additional $25,000 to finish the project. PSB loaned her $25,527, requiring her to execute a multiple indebtedness mortgage on the property subject to a maximum obligation limit of $156,000. Around this time, however, PSB learned *179 that various suppliers and laborers had filed liens on the property in excess of $52,000. PSB also learned that Ms. Holmes had paid neither property insurance nor property tax on the lot; she actually lost title by tax sale in May 1997. Feeling the loan was "out of control," PSB assigned it to a special assets manager, Dale Hopper, who took over the file in January 1998.
Hopper testified that he met with another contractor who estimated it would take an additional $132,000 to complete the house ($52,000 to pay off the liens and $80,000 to complete construction). He knew that Ms. Holmes was working with a loan broker and had obtained a tentative commitment for permanent financing of $487,000 through Hibernia Mortgage Banking. He therefore recommended that PSB try to continue the loan, and prepared a "Draft Loan Agreement" offering her an additional $80,000 to complete construction and an amount sufficient to cover the liens, subject to various conditions including a hold-harmless agreement and her promise to hire a licensed contractor. Ms. Holmes, however, refused to sign this agreement. Relations between Hopper and Reed deteriorated quickly. By February 1998 Ms. Holmes had not yet made a single payment on the $324,368 already loaned; therefore PSB filed an executory process suit against Ms. Holmes in Caddo Parish in March 1998. The District Court issued a writ of seizure and sale on March 30.
Ms. Holmes filed the instant suit against PSB on April 1, 1998, asserting violations of the Louisiana and Federal Equal Credit Opportunity Acts, R.S. 9:3581 et seq., and 15 U.S.C. § 1691, with a prayer for jury trial. Ms. Holmes also attempted unsuccessfully to block the sheriff sale.[1]
PSB asserted an affirmative defense and reconventional demand, urging in essence that any recovery she might have on these claims would be offset by the unpaid notes. Later, PSB filed a motion to strike the jury demand on grounds that Ms. Holmes had not posted her bond within the time limit fixed by the scheduling order. The sheriff sale ultimately occurred on October 28, 1998, with PSB buying the property for $164,000.
By amended petitions, Ms. Holmes abandoned her federal claim and added a prayer to nullify the sheriff sale. When she learned that PSB was trying to sell the property, she filed in the instant proceedings a motion for preliminary injunction, which the District Court granted but this court vacated. Holmes v. Peoples State Bank, 32,749 (La.App. 2 Cir. 3/3/00), 753 So.2d 1006. She then added claims for Federal Truth-In-Lending violations and damages for breach of contract to loan her additional money.
In a separate action, PSB obtained a deficiency judgment against Ms. Holmes in January 2000 for $200,544 plus interest and attorney fees. She did not move for a new trial or suspensive appeal; the judgment is final.
The instant matter came to trial in June 2000. On the first day, the District Court denied Ms. Holmes's demand for jury trial, stating that with the reconventional demand and mandatory offset, her damages would not exceed the jurisdictional limit of $50,000 for a jury trial. Ms. Holmes's *180 counsel, Darien Lester, vigorously objected but did not ask for a stay to seek writs. The trial proceeded for six days between June 26 and July 5.
At the conclusion of trial, the District Court delivered oral reasons for judgment. It enumerated Ms. Holmes's nine remaining claims[2] and reviewed the evidence. The court concluded that she utterly failed in her burden of proof, adducing not a scintilla of evidence to support any of her claims. The court added that Ms. Holmes's case was so devoid of merit that had PSB moved for involuntary dismissal at the close of the plaintiffs case, or for directed verdict in a jury trial, it would have been granted.
On July 11, 2000 the court filed a written judgment rejecting all claims and directing the clerk of court to cancel and erase the notice of lis pendens that had burdened the property since early in the proceedings. Ms. Holmes appealed suspensively, but when she could not provide adequate surety she converted it to a devolutive appeal on September 15. Her first seven assignments of error pertain to the July 11 judgment.
Meanwhile, Ms. Holmes filed another voluntary petition for bankruptcy reorganization on August 9, but converted it to Chapter 7 on September 12. On November 11 PSB filed the instant motion for contempt of court and abuse of process. PSB alleged that on September 15 (three days after filing for Chapter 7 relief and the same day that she abandoned her suspensive appeal) Mr. Lester filed, on Ms. Holmes's behalf, a suit in federal court against PSB and others involved in the failed loan, advancing exactly the same grounds as those just rejected by the state District Court on July 11. He also filed another notice of lis pendens in the Caddo Parish mortgage records; PSB learned of this only moments before a scheduled closing to sell the property. PSB urged that this conduct was constructive contempt of the July 11 judgment canceling the notice of lis pendens.
The District Court held a hearing on December 1, receiving evidence that only the bankruptcy trustee had standing to file the federal suit on Ms. Holmes's behalf on September 15, 2000. The court concluded that the federal suit was a blatant attempt by Mr. Lester to relitigate the claims already rejected in the state court, and that the notice of lis pendens filed in connection with the federal suit was a deliberate circumvention of the state court judgment. The court held him in contempt, sentencing him to 90 days in Caddo Correctional Center and one year of unsupervised probation, suspended on condition of paying all costs of the contempt proceeding, interest of $4,280.59 on PSB's judgment, and attorney fees of $5,000. The court also ordered the notice of lis pendens erased. Judgment was rendered on December 6, and Ms. Holmes added it to her existing devolutive appeal. Her two final assignments of error pertain to the December 6 judgment.

DiscussionJuly 11 judgment
By her first assignment of error Ms. Holmes urges the District Court erred in denying her motion for jury trial. She contests the court's rationale, viz., that the mandatory offset would place her under the jurisdictional limit. She contends that jurisdictional amount is based on "the nature and amount of the principal demand," La. C.C.P. art. 1731 B, not any potential *181 offset; that jury trial is a fundamental right; and that she is entitled to a new trial before a jury.
Contrary to Ms. Holmes's argument, jury trial in civil matters is not a fundamental right; it is subject to reasonable limitations. Kimball v. Allstate Ins. Co., 97-2885 (La.4/14/98), 712 So.2d 46. The review shows that the amended scheduling orders required Ms. Holmes to post a jury deposit in accord with La. C.C.P. art. 1734.1 no later than March 9, 2000 (60 days before the trial setting). On April 6, PSB informed the court and opposing counsel, by pretrial order, that the bond had not yet been posted. "Failure to post the cash deposit shall constitute waiver of a trial by jury." La. C.C.P. art. 1734.1 A; Littleton v. Wal-Mart Stores, 99-390 (La.App. 3 Cir. 12/1/99), 747 So.2d 701, writ denied 00-0804 (La.5/5/00), 761 So.2d 546. Moreover, the law is clear that when the court erroneously grants (or, in our view, refuses) a jury trial, the objecting party cannot wait until verdict and then decide whether to appeal; he must complain "prior to trial, either by application for writs or other appropriate means." Brown v. General Motors Corp., 95-245 (La.App. 5 Cir. 10/18/95), 662 So.2d 531, writ denied 95-3034 (La.2/16/96), 667 So.2d 1055. Finally, the District Court stated in oral reasons for judgment that had there been a jury trial and had PSB moved for a directed verdict, the court would have granted it. Under these circumstances, we find no prejudice in the court's ruling and no reversible error in disallowing a jury trial.
By her second assignment Ms. Holmes urges the District Court erred in dismissing her claim that PSB breached a "fiduciary responsibility" to her. In support she cites R.S. 6:1124, and argues that by executing the interim financing agreement (actually a mortgage) and requiring her to buy a performance bond, PSB created a fiduciary relationship with her and breached it by refusing to extend more credit.
The applicable statute, R.S. 6:1124, provides that no financial institution "shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties * * * unless there is a written agency or trust agreement under which the financial institution specifically agreed to act and perform in the capacity of a fiduciary." (Emphasis added.) We have closely read the interim mortgage and the performance bond and find nothing in these documents to create a fiduciary relationship with Ms. Holmes. In general, an interim loan for construction does not create any fiduciary duties. Casey v. Hibernia Corp., 97-1273 (La.App. 4 Cir. 3/4/98), 709 So.2d 933. As there is no evidence of any fiduciary responsibility, this assignment of error lacks merit.
By her third assignment Ms. Holmes urges the District Court erred in dismissing her claims of fraud. In support she cites La. C.C. art.1958, contending that PSB was guilty of fraud and misrepresentation "in their effort to get Plaintiff to enter into a new loan agreement" and in allowing the performance bond to lapse without advising her of this fact.
Article 1958 provides, "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." The record clearly shows that regardless of any representations made by PSB in its effort to enter a new loan agreement, Ms. Holmes resolutely refused to sign the new agreement. Without a meeting of the minds, there is no contract to rescind and no resultant damages. Independent Fire Ins. Co. v. Lea, 979 F.2d 377 (5 Cir.1992), cert. denied 507 U.S. *182 1052, 113 S.Ct. 1946, 123 L.Ed.2d 652 (1993). This assignment lacks merit.
By her fourth assignment Ms. Holmes urges the District Court erred in rejecting her Regulation "Z" claim. 15 U.S.C. § 1601 et seq.; 12 C.F.R. § 226.2 b. In support she cites a letter from a Mrs. Plunkett of the FDIC advising that the Truth-In-Lending form attached to the $294,000 note and mortgage understated the interest rate applied. The letter states that the cost of the performance bond should have been included as a finance charge, raising the annual percentage rate ("APR") on the 180-day loan from the stated 14.346% to 31.11%.
PSB's president, John Blake, testified at trial that aside from the bond cost, the actual APR was that stated in the note and in the judgment; the bank did not charge her any more interest than the stated rate. He also testified that since Ms. Holmes never made a single payment of interest or principal, he did not feel that she had been harmed by the faulty disclosure. Ms. Holmes offered no evidence to refute his testimony. On this evidence, the District Court was entitled to find that PSB's technical violation was "not material" and therefore did not give rise to civil penalties. See, 15 U.S.C. § 1640(a)(4). Moreover, the record is devoid of evidence that Ms. Holmes sustained any "actual damages" as a result of the alleged failure to disclose. Perrone v. General Motors Accept. Corp., 232 F.3d 433 (5 Cir.2000), cert. denied ___ U.S. ___, 121 S.Ct. 1601, 149 L.Ed.2d 468 (2001).
Mr. Blake also testified that pursuant to the FDIC's investigation, he found that PSB inadvertently calculated interest as though the full $294,000 had been disbursed on the first day of the loan, rather than in increments over time. He figured the overcharge at $10,891; he testified, and bank records confirm, that this credit was applied to her account. Ms. Holmes denied she received any credit, testifying that she never got a cash refund of $10,891. On this evidence, the District Court was entitled to find that PSB made a timely correction of the error and properly credited her account, thus absolving itself of liability. See, 15 U.S.C. § 1640(b). This assignment of error lacks merit.
By her fifth assignment Ms. Holmes urges the District Court erred in rejecting her Regulation "B" claim. 15 U.S.C. § 1691; 12 C.F.R. § 202. Again citing the FDIC letter, she contends that PSB failed to send her an "adverse action notice" after it rejected "her request for additional funds." She argues that PSB sent her the notice only after the sheriff sale occurred, too late for her to take any steps to avert the loss of her property.
As noted, the record clearly shows that Ms. Holmes never made any payments on any of her loans from PSB. The term "adverse action" "does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default[.]" 15 U.S.C. § 1691(d)(6). As Ms. Holmes was plainly delinquent and in default, and was seeking additional credit from PSB, the District Court was entitled to find that no adverse action notice was required.[3] This assignment lacks merit.
By her sixth assignment Ms. Holmes urges the District Court erred in failing to void the sheriff sale. In support she cites La. C.C.P. art. 2644, which permits the creditor to convert an executory *183 process suit into ordinary process, but prohibits the opposite. She contends that when PSB filed its reconventional demand seeking a money judgment on the note secured by the mortgage, it converted its executory process action (a separate lawsuit) into ordinary process; the resulting sheriff sale was therefore null and void.
As noted earlier, PSB's suit for executory process (No. 430,733 in the First Judicial District Court) is separate from the instant suit (No. 430,866 in the same court) in which PSB asserted a reconventional demand. In the first suit, Ms. Holmes attempted unsuccessfully to enjoin the sheriff sale; she neither took a suspensive appeal nor filed a suit for nullity. In essence, she is now attacking the sheriff sale collaterally, by means other than those recognized by law. There is no merit to this claim. Moreover, a creditor may maintain two simultaneous actions, one executory and one ordinary, as long as there is only one satisfaction. Manuel Tire Co. v. J.W. Herpin Inc., 620 So.2d 526 (La. App. 3 Cir.1993). The record clearly shows only one satisfaction. This assignment lacks merit.
By her seventh assignment Ms. Holmes urges the District Court erred in dismissing her claim for breach of loan commitment. In support she cites R.S. 6:1122, arguing that after PSB made her sign a second mortgage for $156,000, it loaned her only $25,000. She contends that failure to loan the balance of the $156,000 was a breach of "loan commitment."
Contrary to Ms. Holmes's argument, R.S. 6:1122 provides, "A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." The multiple indebtedness mortgage clearly identifies the face amount of $156,000 as a "maximum obligation limit." It also states that the debt secured was $25,527, an amount already loaned to Ms. Holmes. It does not contain any promise to loan her the balance of the maximum obligation limit. On this record, the District Court was entitled to reject the lender liability claim. This assignment of error lacks merit.

December 6 judgment
By her eighth assignment Ms. Holmes contests the order holding her attorney, Darien Lester, in contempt of court. She argues that the testimony adduced at the contempt hearing fails to prove that the federal suit raised the same issues as the just-dismissed state court suit; she also contends that one of PSB's witnesses lacked credibility. She asserts that she is "allowed to try to achieve a certain goal and is allowed to use whatever avenue that is legally available," and concludes that "every action taken was legal and well within Plaintiff's rights to do."
As noted, the July 11 judgment not only dismissed all of Ms. Holmes's claims against PSB but ordered the erasure of the notice of lis pendens that had burdened the property since early in the proceedings. PSB's contempt rule urged, in essence, that Ms. Holmes and her attorney violated the judgment by filing another notice of lis pendens in connection with the federal court complaint. The District Court found that the federal suit merely reiterated the claims that had been rejected in State Court and was thus a blatant attempt to continue burdening the property, contrary to the July 11 judgment. The District Court found only Mr. Lester, not Ms. Holmes, in contempt for this filing. Mr. Lester neither appealed in his own name nor sought supervisory relief from the contempt ruling.[4]
*184 The proper party to challenge a contempt order is the person held in contempt. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); see also, In re Grand Jury Proceedings, 875 F.2d 927 (1 Cir.1989). The procedure for punishing contempt, La. C.C.P. art. 225, clearly refers to "a person charged with committing a constructive contempt," providing for a rule to show cause and a hearing. There is no provision for a party not held in contempt to appeal the finding. Since only Ms. Holmes has appealed, and not Mr. Lester, the issue is not properly before us. This assignment lacks merit.
Contempt statutes are subject to strict construction. Kidd v. Caldwell, 371 So.2d 247 (La.1979); State Bd. of Embalmers & Funeral Directors v. Caskets Direct, Inc., 30,861 (La.App. 2 Cir. 8/19/98), 716 So.2d 943. We therefore note, parenthetically, that the record shows full compliance with all the procedural safeguards of art. 225, including specific findings of constructive contempt.[5] We have reviewed the complaint filed by Mr. Lester in federal court; the District Court was not plainly wrong to find that it advanced exactly the same facts and theories of recovery as the state court suit which had just been dismissed. We also find that because Mr. Lester converted Ms. Holmes's bankruptcy petition to Chapter 7 on September 12, only the bankruptcy trustee, not the bankrupt, had the right to assert the claims urged in the federal suit on September 15. See, 11 U.S.C. §§ 323(b), 704(1). These facts, taken together, fully support the District Court's finding that Mr. Lester wilfully and intentionally disregarded a valid order to erase the notice of lis pendens. If the issue were properly before us, we would affirm the judgment.
By her ninth assignment Ms. Holmes urges the District Court erred in erasing the notice of lis pendens that had been filed in connection with the federal court suit. She contends that La. C.C.P. art. 3751 gives her the right to lis pendens during the pendency of the federal action.
Contrary to Ms. Holmes's argument, the record shows that the federal action was essentially a reprise of the state court action, which had resulted in the erasure of a notice of lis pendens.[6] The District Court was entitled to find that filing the second notice of lis pendens was in wilful disobedience of a valid court order, an abuse of process and an act intended to interfere with the orderly administration of justice. La. C.C.P. art. 224. The District Court did not abuse its discretion in ordering this notice to be erased.

Conclusion
For the reasons expressed, the judgments are affirmed at appellant's cost.
AFFIRMED.
*185 APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, CARAWAY, and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] Ms. Holmes filed, in the executory process suit, a petition to arrest the seizure and sale; this was rejected by the District Court, and writs were denied by both the Second Circuit and the Supreme Court. Peoples State Bank v. Holmes, 98-1448 (La.6/2/98), 720 So.2d 1202. She also filed a Chapter 13 bankruptcy petition, which she dismissed voluntarily after the bankruptcy judge refused to stay the sheriff sale. See, Holmes v. Peoples State Bank, 32,749 (La.App. 2 Cir. 3/3/00), 753 So.2d 1006.
[2] These were (1) Louisiana Equal Credit Opportunity Act violation; (2) breach of fiduciary responsibility; (3) breach of loan commitment; (4) improperly conducted sheriff sale; (5) denial of due process; (6) fraud and misrepresentation; (7) discrimination; (8) Regulation "Z" violation; (9) Regulation "B" violation.
[3] By pretrial motion, argument at trial and appellate brief, counsel for PSB vigorously argues that the FDIC letter was hearsay and should not have been admitted. In view of District Court's factual findings, we pretermit the issue of admissibility.
[4] Mr. Lester was declared ineligible to practice law effective July 26, 2001 for failure to comply with mandatory continuing legal education requirements.
[5] The court cited the following from C.C.P. art. 224: "(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court; * * * (4) Deceit or abuse of the process or procedure of the court by a party to an action or proceeding, or by his attorney; * * * (10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt."
[6] PSB also asserts in brief that Ms. Holmes's federal suit was dismissed on motion for summary judgment on December 12, 2000, and that her appeal of the summary judgment was dismissed for want of prosecution on May 28, 2001.