MOORE, J.
 

 | [Cynthia M. Harrison appeals a judgment that allowed her former husband, Ricky D. Martin, to move from Shreveport to Fincastle, Virginia, taking the parties’ 11-year-old daughter KM. with him. For the reasons expressed, we affirm.
 

 Procedural Background
 

 The instant appeal is Cynthia’s seventh appearance before this court.
 
 [1]
 
 Prior rulings awarded Ricky and Cynthia joint custody of KM., naming Ricky the domiciliary parent and granting Cynthia supervised, limited visitation. Because of allegations that Cynthia’s current husband, Jeffery Harrison, had abused K.M., in October 2003 the district court subjected Cynthia’s visitation to the condition that she and Jeffery undergo mental health examinations by Dr. Richard Williams. For over 2⅜ years, Cynthia failed to contact Dr. Williams, but she finally made an appointment in November 2006. Dr. Williams requested various documents which she never furnished. She set another appointment for July 24, 2008.
 

 Coincidentally, the instant rule arose on July 24, 2008, when Cynthia filed a
 
 pro se
 
 pleading entitled “Expedited motion for non-relocation of minor child, expedited motion for visitation and custody.” She alleged that Ricky was planning to move from Shreveport to Virginia, 1,200 miles away, creating a hardship financially and emotionally, and Ricky could show neither the economic benefit of moving nor why he could not be financially | ¿independent in Shreveport. She also alleged that Ricky had failed to comply with various aspects of the joint custody plan, thus entitling her to custody and visitation. Finally, she asked for a status hearing on KM.’s health. The district court signed an order fixing Cynthia’s rule for August 4, 2008; apparently, she failed to appear for this, and the matter was refixed for August 12.
 

 Meanwhile, Ricky filed a rule seeking the court’s approval to move with K.M. to Fincastle, Virginia, where he could earn a higher wage and be closer to his immediate family. He alleged that in accordance with the joint custody plan, he had notified Cynthia of his intended move by certified mail and she signed the receipt. Finally, he alleged that Cynthia was $461 behind in child support and had never met with Dr. Williams, for which he asked to hold her in contempt. The district court fixed this rule for August 25, but relocation was before the court at the August 11 hearing.
 

 At the hearing, the court stated that the issue was Cynthia’s motion to deny the relocation; Cynthia did not object or request hearing on any other matters. As in most of the prior proceedings, Cynthia appeared
 
 pro se.
 
 She narrated that Ricky had denied her contact with K.M.: he changed his phone number and, apparently, his address, as birthday and other cards she mailed to his University Drive house were returned “forwarding order expired.” However, she admitted that she mailed two of these cards from France and Egypt, where she and Jeffery were vacationing, that she received Ricky’s certified letter, and that she and Jeffery now live in
 
 *514
 
 Tomball, Texas (near Houston). She stated that her parents’ health and Jeffery’s work schedule [¡¡prevented her from seeing Dr. Williams any sooner than five years after the court order. At first, she denied that the mental health examination was a prerequisite for resumed visitation, but eventually admitted that this was in fact the case. Finally, she tendered $200 toward the back child support.
 

 The district court stated from the bench that it would not consider her request to modify custody or visitation until both Cynthia and Jeffery submitted to examinations by Dr. Williams.
 

 Ricky testified that his brother owns a construction company in Fincastle, Virginia, 986 miles from Shreveport, and has promised him a job paying $35,000 a year. Although Ricky once made $42,000 a year in Shreveport selling swimming pools, that job ended and he had gone months unable to find work. If allowed to move, he would initially stay in his parents’ 4,000-sq. ft. house, and the public school that KM. would attend was “very clean.” He admitted not often forwarding information about K.M. to Cynthia, but maintained that the joint custody plan, as amended, required him to notify her only if K.M. was hospitalized, which never occurred.
 
 [2]
 
 He felt that complying with Cynthia’s requests early in the proceedings had only incited her to file more rules, so he quit. He admitted that he had moved from University Drive to a house owned by his parents on Woodbriar Street, but he maintained he was allowed to change residence in Caddo Parish without court approval.
 
 [3]
 

 |4Pr. Williams testified that shortly after the court order, Ricky paid him $3,000 for the evaluations of himself, his current wife and K.M.; Cynthia waited over 2½ years to pay, failed to give him necessary documents, and did not see him again until July 24, 2008, the day she filed this rule. He testified that he really needed to see Jeffery, who had been charged with indecent exposure to K.M., but that Cynthia insisted that all charges had been dropped. Finally, he testified that K.M. was doing very well with Ricky; the child had voiced virtually no interest in staying with Cynthia. Dr. Williams considered it in KM.’s best interest to move to Virginia with Ricky.
 

 The court ruled orally, granting Ricky permission to relocate to Virginia with K.M., conditioned on another examination by Dr. Williams. It deferred ruling on all other issues until Dr. Williams completed his assessments of Cynthia and Jeffery. It rendered judgment to this effect and Cynthia took the instant appeal.
 

 Discussion
 

 By
 
 pro se
 
 brief, Cynthia has listed 12 “Issues for review and errors of the court,” numbered 1M and 6-13 (omitting No. 5). Most of these may be dismissed summarily. The first five are as follows (verbatim):
 

 (1) The transcripts are not accurate. The recorded proceedings need to be listened to and the transcripts need to be corrected.
 

 (2) The court did not allow Cynthia Harrison to introduce all evidence in this case.
 

 
 *515
 
 (3) Judge Waddell’s conduct in not allowing Cynthia Harrison to address the court.
 

 (4) Judge Waddell’s conduct in not allowing Cynthia Harrison to Improperly question the witnesses.
 

 (6) The court erred in allowing Dr. Richard Williams to testify on the evaluations.
 

 These assignments lack merit for several reasons. They are purely conelu-sory, lacking even a scintilla of substantiation: Cynthia does not show what part or parts of the record she considers inaccurate, what documents or testimony were improperly excluded or admitted, or when she was denied the right to address the court. As framed, these errors present absolutely nothing for the court’s review.
 
 [4]
 
 Moreover, the record does not show that Cynthia objected to any of the court’s rulings. Failure to object deprives the district court of the opportunity to correct a contested ruling and constitutes waiver of the issue on appeal. La. C.C.P. ait. 1635;
 
 Holmes v. Peoples State Bank,
 
 35,072 (La. App. 2 Cir. 9/26/01), 796 So.2d 176,
 
 writ denied,
 
 2001-3139 (La.2/1/02), 808 So.2d 342,
 
 cert. denied,
 
 537 U.S. 897, 123 S.Ct. 197, 154 L.Ed.2d 167 (2002). Finally, our review of the record as a whole uncovers no rulings that could possibly be construed as a denial of Cynthia’s due process rights.
 

 The final six alleged errors are simply not before the court:
 

 (8) The court did not find Ricky Dale Martin in contempt for moving from the University Drive address without the court or Cynthia Harrison’s knowledge or permission.
 

 (9) The previous appeals were filed because of numerous violations of the Civil Code of Procedure [sic ], District Court Rules and Supreme Court Rules.
 

 (10) The court not finding Ricky Dale Martin in contempt for not | (¡providing information about Cynthia Harrison’s daughter.
 

 (11) The court not finding Ricky Dale Martin in contempt keeping K.M. secretive [sic ] from her mother Cynthia Harrison.
 

 (12) The court did not allowed [sic] Cynthia Harrison’s motion on visitation or custody.
 

 (13) The court had allowed the suspension of Cynthia Harrison’s parental rights without a hearing or trial.
 

 At the hearing on August 11, 2008, the court stated that the only issue was Cynthia’s motion to deny the relocation. Near the close of Cynthia’s narrative testimony, the court reiterated that it would not entertain her requests to modify custody or visitation until she and her husband submitted to examinations by Dr. Williams. This court has already admonished Cynthia:
 

 Contrary to Cynthia’s assertion that her right of access to the court has been unlawfully denied by the trial court, we find, as set forth several times above, that appellant’s access to the courts is limited by her own willful and blatant disobedience of the trial court’s clear order that she submit to a mental health examination before any further activity, * * ⅜ hearings or proceedings of any kind, or the resumption of visitation with her daughter, will occur in this case. Considering the fact that the state has a compelling interest in protecting chil-
 

 
 *516
 
 dren from sexual abuse, the trial court was certainly well within its discretion in ordering the mental health examinations before this matter is allowed to proceed any further.
 

 Martin v. Martin,
 
 39,631, at p. 14, 903 So.2d at 626-627.
 

 Any issues other than Ricky’s proposed relocation to Virginia with K.M. were simply not before the court. If and when Cynthia and Jeffery comply with the court-ordered mental health examinations, the remaining issues may proceed to trial. At present, there is nothing to appeal.
 

 By her seventh alleged error, Cynthia urges the court erred in fallowing relocation without completing all the hearings in the case. She contends that the court did not adequately consider the statutory factors for a contested relocation, La. R.S. 9:355.12.
 
 [5]
 
 She also argues that Ricky’s explanation for the move to Virginia was inaccurate: his real purpose was to prevent her case from coming to trial and to evade an evaluation by
 
 her
 
 expert psychiatrist, Dr. Brown. In the alternative, she asks the court to retain continuing, exclusive jurisdiction of the case under La. R.S. 9:355.17.
 

 Although R.S. 9:355.12 mandates that all the listed factors be considered, it does not require the court to give preferential consideration to any certain factor or factors.
 
 Curóle v. Curóle,
 
 2002-1891 (La.10/15/02), 828 So.2d 1094. The district court is vested with great discretion in matters |Rof child custody and visitation; its determination is entitled to great weight and will not be disturbed absent a clear showing of abuse of that discretion.
 
 Id.; Payne v. Payne,
 
 41,049 (La.App. 2 Cir. 5/19/06), 930 So.2d 1181,
 
 writ denied,
 
 2006-1871 (La.8/9/06), 935 So.2d 130.
 

 On review, we find no abuse of the district court’s discretion. The record shows that K.M. has spent several years with
 
 *517
 
 Ricky and his family while having virtually no contact with Cynthia. If Cynthia had devoted a small part of her energy to complying with the court’s orders instead of pursuing a tortured course of pointless litigation, the situation may have been different. Ricky’s reasons for relocating appear likely to enhance the quality of KM.’s life and to advance Ricky’s career. There is no record evidence to support Cynthia’s claim that Ricky is seeking to evade trial or mental evaluation; to the contrary, the record shows Ricky’s history of compliance with the joint custody plan. We perceive no abuse of the district court’s discretion. This assignment lacks merit.
 

 Conclusion
 

 For the reasons expressed, the judgment allowing the relocation is affirmed. All costs are to be paid by Cynthia Martin Harrison.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Martin in Int. of K.M. v. Harrison,
 
 37,891 (La.App. 2 Cir. 9/26/03), 855 So.2d 950;
 
 Martin v. Harrison,
 
 37,958 (La.App. 2 Cir. 12/10/03), 862 So.2d 1081,
 
 writ not cons.,
 
 2004-0481 (La.3/12/04), 869 So.2d 807;
 
 Martin v. Martin,
 
 38,341 (La.App. 2 Cir. 4/7/04), 870 So.2d 648 (table);
 
 Martin v. Martin,
 
 38,-899 (La.App. 2 Cir. 6/17/04) (summary dismissal);
 
 Martin v. Martin,
 
 39,319 (La.App. 2 Cir. 2/17/05), 895 So.2d 80 (table);
 
 Martin v. Martin,
 
 39,631 (La.App. 2 Cir. 5/18/05), 903 So.2d 619,
 
 writ denied,
 
 2005-1606 (La.6/22/05), 904 So.2d 714.
 

 [2]
 

 . The joint custody plan actually provided, "All medical and other information regarding the children's health and welfare will be furnished to the other parent as either parent receives same.”
 

 [3]
 

 . The joint custody plan provided, "Either parent may remove residence from the Parish of Caddo. The residence of the children shall not be removed at any time from Caddo Parish without an appropriate order of this court. Both such moves shall be governed by the provisions of LSA-R.S. 9:355.1 et seq.”'
 

 [4]
 

 . The brief does not comply with URCA 2-12.4, ¶ 4, in that it includes no “suitable reference by volume and page to the place in the record which contains the basis for the alleged error.” In light of Cynthia's
 
 pro se
 
 status, however, this court accepted the brief and reviewed the entire record for evidence to support her arguments.
 

 [5]
 

 . This statute provides in pertinent part:
 

 A. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
 

 (1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
 

 (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
 

 (3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
 

 (4) The child’s preference, taking into consideration the age and maturity of the child.
 

 (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
 

 (6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
 

 (7) The reasons of each parent for seeking or opposing the relocation.
 

 (8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
 

 (9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
 

 (10) The feasibility of a relocation by the objecting parent.
 

 (11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
 

 (12) Any other factors affecting the best interest of the child.