555 So.2d 1381 (1990)
Nelson LABURRE
v.
EAST JEFFERSON GENERAL HOSPITAL, et al.
No. 89-CC-1262.
Supreme Court of Louisiana.
February 5, 1990.
Edward A. Rodrigue, Jr., Terry B. Deffes, Boggs, Loehn & Rodrigue, New Orleans, for defendant-applicant.
Cameron C. Gamble, C.T. Williams, Jr., William H. Voight, Blue, William & Buckley, Metairie, for respondents.
LEMMON, Justice.
We granted certiorari to determine whether the Blood Center of Southeast Louisiana, Inc. may be compelled under the circumstances of this case to disclose the *1382 names and addresses of the blood donors whose blood was used in transfusions from which plaintiff allegedly contracted hepatitis.
On January 16, 1980, plaintiff received transfusions of several units of blood following surgery at East Jefferson General Hospital. Two units of the blood received by plaintiff had been purchased by East Jefferson from the Blood Center and another from Mercy Hospital. Two months later plaintiff was diagnosed as having a mild case of hepatitis, but was eventually diagnosed as having chronic non-A, non-B hepatitis.
Plaintiff filed this action against East Jefferson, Mercy and the Blood Center, asserting that the defendants were solidarily liable under theories of strict liability for his damages caused by the blood transfusions.[1]
Mercy sought to depose the Blood Center's custodian of records and issued a subpoena duces tecum requesting production of "any and all records relating to the blood supplied ... which was ultimately transfused into the patient Nelson Laburre... including, but not limited to information relative to the testing, screening, processing, purchasing, selling, transfusing, and storing of said blood". The Blood Center produced the blood donor cards completed by the two volunteer donors at the time of the donation and the follow-up questionnaires completed two years later.[2] However, the Blood Center deleted the names and addresses of the blood donors, contending that this information was privileged or otherwise should be held confidential.
Mercy filed a motion to compel the disclosure of the names and addresses of the blood donors. At the hearing on the motion the medical director of the Blood Center testified that volunteer blood donors give blood based on the assurance that the information provided in connection with the donation will be kept confidential. He also stated his belief that some prospective donors would not answer the questions honestly if they knew they could be subpoenaed and questioned about this information. The trial judge denied the motion.
The court of appeal granted Mercy's application for supervisory writs to review the decision of the trial court. In the intermediate court the Blood Center argued that the confidentiality of the names and addresses, as well as the personal and medical records of the donors, was statutorily protected in Louisiana under the health care provider-patient privilege found in La. R.S. 13:3734. In addition the Blood Center argued that the donors had the right to privacy under both the Louisiana and United States Constitutions which prevented the release of their names and addresses in connection with their blood donations. Conversely, Mercy argued that the need for disclosure outweighed the donor's right to privacy in this particular case. Mercy asserted that the names and addresses of *1383 the donors were crucial to its defense and were needed to validate the information provided by the donors on the donor cards.
The court of appeal rendered judgment requiring the Blood Center to disclose the requested information. 543 So.2d 1071. The court held that the health care provider-patient privilege in La. R.S. 13:3734 was not applicable. Further noting that the determination of the motion to compel disclosure turned on balancing of the need for disclosure, the donors' rights of privacy, and the ultimate effect on the public welfare of disclosure or non-disclosure under the particular situation, the court concluded that disclosure would not cause undue injury to the public welfare. The court opined that protective orders can be issued to protect the donors' rights of privacy.
We granted certiorari to review this ruling. 545 So.2d 1052.
A party generally may obtain discovery of any information which is relevant to the subject matter involved in the pending action. La.C.C.P. art. 1422. There are limitations to this rule, however, when the information sought is privileged, La.C.C.P. art. 1422, or when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense. La.C.C.P. art. 1426.
The threshold question is whether the physician-patient privilege, as presently written, is applicable in the instant situation.
The physician-patient privilege, which did not exist at common law, was first enacted in the United States in New York in 1828 and has since been adopted in one form or another by almost all of the states. 8 J. Wigmore, Evidence § 2380 (McNaughton rev. ed.1961); S. Stone & R. Liebman, Testimonial Privileges § 7.01 (1983). Louisiana's first physician-patient privilege appeared in the 1879 Constitution and was continued through the 1921 Constitution. La. Const. art. 297 (1898); La. Const. art. 297 (1913); La. Const. art. 6, § 12 (1921); Comment, The Physician-Patient Privilege in Louisiana and its Limitations, 31 Tul.L.Rev. 192 (1956).
In 1927 this court held that the constitutional provision was not self-operative. The following year the Legislature expressly provided for a physician-patient privilege in the Code of Criminal Procedure. Pugh, The Work of the Louisiana Appellate Courts for the 1965-66 Term, Evidence, 26 La.L.Rev. 606, 614 (1966). The privilege, however, was not recognized in civil cases until 1968 when the Legislature responded to scholarly suggestions for such a privilege with the passage of Acts 1968, No. 499, which enacted La.R.S. 13:3734. Comment, Competent Opinions and Privileges, 21 Loy.L.Rev. 422, 443 (1975).
The privilege in civil cases is now contained in La.R.S. 13:3734 B, which provides in part:
Except as hereinafter provided, in civil cases, ... a patient or his authorized representative, has a privilege to refuse to disclose and to prevent a health care provider from disclosing any communication, wherever made, relating to any fact, statement or opinion which was necessary to enable that health care provider or any other health care provider to diagnose, treat, prescribe or act for the patient.[3]
A principal purpose of the physician-patient privilege is to encourage full disclosure by the patient of his symptoms and condition to the physician in order to ensure proper diagnosis and treatment. The threat of disclosure of patient confidences may deter patients from revealing information that could result in humiliation, embarrassment, or disgrace to the patient or that could be the basis for the patient's legal liability. S. Stone & R. Liebman, supra, § 7.02. Another rationale for the privilege is the fundamental recognition of a patient's interest in the privacy of therapeutic matters. S. Stone & R. Liebman, supra.
*1384 The physician-patient privilege was designed to promote openness in patients who seek treatment or therapy. The patient for whom protection was intended by the privilege is a person who is in need of medical care and who might otherwise withhold relevant information for fear that it may later embarrass him or be used against him in legal proceedings.
A blood donor is not a patient who consults blood bank personnel for treatment or therapy. Moreover, while openness and candor by a blood donor in answering questions about his medical and personal history should be encouraged, full disclosure is essential for the benefit of the blood recipient and not the blood donor.[4] We therefore conclude that a blood donor is not a patient within the contemplation of the physician-patient privilege.
Although the privilege is not applicable in the present case to prevent disclosure of the names and addresses of the blood donors, the court may still deny disclosure of this information, if justice requires confidentiality in order to protect the donors from annoyance, embarrassment, oppression, or undue burden or expense. La.C.C.P. art. 1426. In determining whether to require disclosure of the requested information, the court must balance the significant privacy interest of the donors and other public policy considerations against Mercy's need for disclosure in this particular case.
There is an expectation of privacy which surrounds the blood donation process. Blood donors are assured confidentiality when they are questioned during the screening process about their medical history, drug use and sexual activity. Confidentiality is necessary to encourage donors to provide correct information relating to history, symptoms or behaviour which would indicate disease that may be passed on to the recipient of their blood. There is a strong possibility that questions such as these would not be answered honestly if the donors believed that their records could be subpoenaed or the answers could be made public. It is essential that volunteer donors disclose accurately and candidly any information concerning their sexual activity, drug use, and any other activities that have been linked to the transmission of certain diseases, especially in light of the current threat of AIDS from blood transfusions. Note, Aids: A Threat to Blood Donor Anonymity, 66 Neb.L.Rev. 863, 878 (1987). Furthermore, because there are presently no tests which can consistently detect non-A, non-B hepatitis in the blood, the best potential for identifying contaminated blood is from the personal history provided by donors. If donors believed that there was any threat of their being made a party to a lawsuit or of an investigation into their personal lives because of their blood donation, they may not provide completely accurate information.
Additionally, public policy favors promoting the availability of an adequate supply of blood for transfusions, which is generally recognized as a pressing national medical need. The American National Red Cross, the American Association of Blood Banks, and the Council of Community Blood Banks filed amici curiae briefs in this case arguing that because virtually all blood collected at this time comes from unpaid volunteer donors, adequacy of the supply depends upon convincing volunteers to donate blood. Amici curiae point out that fear by volunteers of being called into litigation and subjected to questioning about intimate details of their personal lives could drastically affect the supply of blood donations.
Although there is a need to prevent the spread of disease through blood transfusions, even healthy donors may be discouraged from donating blood if there is a threat of disclosure of private information about their personal lives. The prospect of being dragged into litigation as a party or a witness or of intrusive questioning by lawyers about sensitive personal issues, or of having relatives, friends, co-workers and employers questioned during an investigation into a donor's drug use, sexual practices *1385 and lifestyle, will present a significant disincentive to voluntary blood donations.
On the other hand, the need for disclosure in the present case is not compelling. Mercy, itself a blood collector, concedes that donor identity and records should be held confidential in most cases, but argues that limited disclosure should be permitted in this case under the rules of discovery.[5]
Mercy has already been provided with all the personal and medical information revealed by the donors in 1980, but wants to check the accuracy of that information and to obtain current information. There is no indication that the 1980 information was inaccurate, and current information on symptoms of hepatitis is of marginal value in proving negligence in this contest between two blood collectors. While the information may have some value on the issue of causation, that value is greatly outweighed by the detriment to society and to the donors' privacy interest from the conducting of an investigation at the donors' neighborhood and workplace into many sensitive aspects of the donors' personal and medical background. See Doe v. American Red Cross Blood Services S.C. Region, 125 F.R.D. 646 (D.S.C.1989) (the volunteer donor's interest in privacy and society's interest in preserving the integrity of the nation's voluntary blood programs outweigh the plaintiffs' interest in deposing the donor); Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla. 1987) (because the prospect of inquiry into one's private life and potential association with AIDS will deter blood donations, society's interest in a strong and healthy blood supply will be furthered by denial of discovery); Doe v. University of Cincinnati, 42 Ohio App.3d 227, 538 N.E.2d 419 (1988) (the vital public interest of society in maintaining an adequate and effective blood supply will be furthered by denying discovery of the donor's name and address).
Finally, allowing discovery of the information provided by donors on the donor cards and follow-up questionnaires, without the names and addresses of the individual donors, will provide most of the pertinent information in this type of case, but will not undermine the donor's expectation of privacy or threaten the nation's blood supply. The information on the cards and questionnaires does not suggest the identity of the donor and therefore will not lead to possible embarrassment, oppression or burdensome litigation for the donor.
A trial court has broad discretion in discovery matters, including discretion to deny discovery under La.C.C.P. art. 1426. The trial judge in the present case denied Mercy's motion to compel the Blood Center to disclose the names and addresses of the donors whose blood was provided to plaintiff, essentially determining that the donors' privacy interests and the public's interest in maintaining an adequate blood supply outweighed Mercy's need for disclosure in the contest between two blood collectors. This ruling was not an abuse of discretion.
Accordingly, the judgment of the court of appeal is reversed, and the judgment of the trial court denying Mercy Hospital's motion to compel discovery is reinstated. Costs are assessed against Mercy Hospital.
DIXON, C.J., concurs.
WATSON, J., dissents.
DENNIS, J., dissents with reasons.
NOTES
[1] Plaintiff's cause of action arose before the enactment of La.R.S. 9:2797 in 1981 and its 1982 amendment. As amended, La.R.S. 9:2797 provides:

Strict liability or liability of any kind without negligence shall not be applicable to physicians, dentists, hospitals, hospital blood banks, or nonprofit community blood banks in the screening, processing, transfusion, or medical use of human blood and blood components of any kind and the transplantation or medical use of any human organ, human tissue, or approved animal tissue which results in transmission of viral diseases or any infectious agent undetectable by appropriate medical and scientific laboratory tests.
In Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878 (La. 1985), this court held that La.R.S. 9:2797 does not apply retroactively. Therefore, plaintiff's case falls under the decision in DeBattista v. Argonaut-Southwest Insurance Co., 403 So.2d 26 (La.1981), which held that a blood bank which distributed diseased blood without negligence could be held strictly liable for damages incurred by a person who contracted hepatitis after a transfusion of the unwholesome blood.
[2] In addition to providing other information each donor stated on the donor card that he had no history of hepatitis, had not tested positive for hepatitis, had no hepatitis contact, had never had a transfusion, and had never been rejected as a donor. On the follow-up questionnaire each donor denied any subsequent history or symptoms of hepatitis, any contact with hepatitis, any rejection as a blood donor, and any investigation for a possible case of hepatitis in connection with any other donation.
[3] The exceptions to the privilege are listed in La.R.S. 13:3734 C and do not apply in the present case.
[4] Whether there should be a special privilege for information given by a donor to a blood bank in the blood donation process is a question appropriately addressed to the Legislature.
[5] The plaintiff, who appears destined to recovery against either or both Mercy and the Blood Center under the strict liability law applicable in this case, was apparently disinclined to take sides on the pertinent issue and did not participate in the proceedings in this court.