837 So.2d 714 (2003)
Regina ROBINSON, Plaintiff-Appellee,
v.
HEALTHWORKS INTERNATIONAL, L.L.C., Defendant-Appellant.
No. 36,802-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
Rehearing Denied February 27, 2003.
*716 Stephen G. Dean, Rayville, James A. Rountree, for Appellant.
Courtman Employment Law Firm by: Matthew Maxwell Courtman, Robert Allen Lee, Monroe, for Appellee.
Before CARAWAY, PEATROSS and DREW, JJ.
CARAWAY, J.
Plaintiff left her former business and accepted employment with the defendant. After eight months, plaintiff quit her employment, claiming that she had been discriminated against on the basis of religion. She brought this suit for discrimination claims and for detrimental reliance concerning her change in employment. A jury awarded her judgment on both claims. For the following reasons, we affirm the judgment pertaining to employment discrimination, but reverse the judgment on plaintiff's detrimental reliance claim.

Facts
Healthworks International, L.L.C. ("Healthworks") employed plaintiff, Regina Robinson, from July of 1999 to March of 2000. Prior to her employment at Healthworks, Robinson and her current husband, Mike Johnson, owned and operated a business which made plastic display cases and repaired plastic tanks for farmers. They repaired approximately four tanks per week and sold approximately 200 plastic displays per week to Healthworks.
In March of 1998, Sam Noble and Ivan Hawthorne, the owners of Healthworks, approached Robinson and Johnson and asked them to work for the company. Healthworks wanted to produce the plastic displays in-house. Robinson and Johnson agreed to begin working there. At that time, Robinson and Johnson lived in West Carroll Parish and Healthworks' plant was located in Winnsboro. Robinson was employed as a "bending and assembly supervisor," which included the task of bending plastic used in the manufacturing process. Robinson's starting wages were $7.50 per hour, and she claims that Healthworks *717 offered to pay her $10 per hour after she was employed for six months.
Robinson is a Baptist. The other employees of Healthworks, including management, are Apostolic. Robinson stated that Mark Batterton, the operations manager, told her that women had to wear skirts to work. Prayer meetings were conducted every morning and Robinson was expected to attend those meetings.
She was also expected to attend the same church that the other employees and management attended, the Apostolic Tabernacle. At her first visit to the Tabernacle, she wore a dress with short sleeves. She also wore make-up and lipstick. Robinson testified that at that service the preacher pointed at her and called her a "Jezebel." During her second visit to the church with Johnson, the preacher commented that people with facial hair were evil. Johnson was the only person there with a beard.
According to Robinson, other employees ridiculed her about her religion. Don Batterton, a company supervisor, informed her that, according to the Bible, men were superior to women and that God would forgive her for being Baptist. Robinson testified that Batterton also played loud "preaching" tapes at the work site. The tapes were so loud that Robinson could not concentrate. On one occasion when Robinson's daughter was sick, Batterton instructed her to not take her daughter to the doctor and to let God heal her.
Robinson also testified that management and other employees also chanted and screamed, "We shall fear no evil." Employees looked at her and told her that there was an evil spirit in the factory and that they were going to cast out the evil spirit. On her last day of employment, one employee, Gloria Jackson, said, "God told me that someone was going to quit."

Procedural History and Jury Verdict
Robinson's petition urged various claims against Healthworks. She asserted an action for detrimental reliance, claiming that she had relied on Healthworks' promise to raise her salary to $10 per hour after her first six months of employment. After six months, she did not receive the raise. She further alleged that Healthworks' employment promises had caused her to abandon her plastics business in West Carroll Parish, and such business could not be re-established. Robinson also alleged claims for unlawful discrimination based on religion and gender.
Robinson requested a jury trial. In the jury charge, the trial court instructed the jury on two claims, detrimental reliance and religious discrimination. For the religious discrimination claim, the court specifically outlined the law pertaining to a hostile work environment and constructive discharge of an employee.
The jury found that Healthworks unlawfully discriminated against Robinson on the basis of her religion and awarded her $40,000 on that count. The jury awarded Robinson $31,200 in damages on the detrimental reliance claim. Additionally, pursuant to the employment discrimination statute, the trial court awarded Robinson attorney fees in the amount of $16,000.
The first five jury interrogatories were included under the subheading "Detrimental Reliance." The next six interrogatories were included under the subheading "Religious Discrimination." The jury answered "yes" to all of the jury interrogatories, which provided as follows:
1. Did Healthworks promise plaintiff $10 an hour after six months and a share of the profits of Healthworks?
2. Was the promise made in such a manner that Healthworks knew or *718 should have known that Mrs. Johnson would rely on the promise?
3. Did Mrs. Johnson change her position because of Healthworks' promise?
4. Was Mrs. Johnson's reliance on the promise reasonable?
5. Did Mrs. Johnson's reasonable reliance on the promise cause her damages?
6. Was Mrs. Johnson subjected to harassment?
7. Was the harassment motivated by discrimination against plaintiff's religion?
8. Did the harassment affect a term, condition, or privilege of employment?
9. Did Healthworks know, or should it have known, of the harassment, and if so, did it fail to take proper remedial action?
10. Was Mrs. Johnson subjected to such intolerable working conditions that she was forced to resign?
11. Were the intolerable working conditions the result of religious discrimination?
Answering the last two interrogatories, the jury fixed damages as follows:
12. If the answer to question five is "yes," state the amount of damages. $31,200.00
13. If the answer to question 11 is "yes," state the amount of damages. $40,000.
Healthworks appeals, raising the following assignments of error:
1. The trial court erred in finding that Robinson was constructively discharged;
2. The trial court erred in allowing Patrick and Christy Acton to testify as rebuttal witnesses; and
3. The trial court erred in awarding damages for both detrimental reliance and constructive discharge.
Robinson answered the appeal seeking additional attorney fees.

Discussion
Louisiana's anti-discrimination statute provides, in pertinent part, as follows:
It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.
La. R.S. 23:332(A). This statute mirrors federal law, 42 U.S.C.A. § 2000e, et seq., and because of its similarity, Louisiana courts routinely look to federal jurisprudence for guidance. Spears v. Rountree Oldsmobile-Cadillac Co., 26,810 (La. App.2d Cir.4/5/95), 653 So.2d 182; Plummer v. Marriott Corporation, 94-2025 (La. App. 4th Cir.4/26/95), 654 So.2d 843.
The United States Supreme Court has discussed the "exercise of religion" in an employment setting as follows:
But the "exercise of religion" often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others *719 for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation.
Employment Div., Dep't of Human Resources v. Smith, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In order to prevail in a hostile work environment claim, a plaintiff must assert and prove that: (1) she belongs to a protected group; (2) she was subjected to harassment; (3) the harassment was motivated by discriminatory animus (religion); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Hicks v. Central Louisiana Elec. Co., Inc., 97-1232 (La.App. 1st Cir.5/15/98), 712 So.2d 656, 658-659, citing Cortes v. Maxus Exploration Co., 977 F.2d 195 (5th Cir.1992).
In an employment discrimination case, a plaintiff may be awarded damages for emotional distress because he or she was subjected to a hostile work environment, economic damages for being discharged, and punitive damages. See, Hanley v. Doctors Hospital of Shreveport, 35,527 (La.App.2d Cir.6/6/02), 821 So.2d 508. To recover damages for emotional distress, a plaintiff must prove actual damages, which may be manifested by anxiety, stress, depression or humiliation. Hanley, supra, citing Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). To recover damages for constructive discharge, a plaintiff must prove that the employer intended to and deliberately created such intolerable working conditions that the employee was forced into involuntary resignation. See Plummer, supra. Further, the trier-of-fact must find that the conditions were so severe that a reasonable person in the employee's shoes would have felt compelled to leave. Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir.1993).
From this review of the law and jurisprudence, we find it important to highlight the distinction between recovery for the hostile work environment caused by employment discrimination and recovery for the employee's discharge from employment. Healthworks' assignment of error and argument to this court pertain only to Robinson's claim for constructive discharge. In making that argument from the facts of the case, Healthworks insists that Robinson was hurt and humiliated on her last day of work by Don Batterton's handling of another issue on the job which was totally unrelated to her claims of religious discrimination. Healthworks further points to Robinson's testimony at trial admitting that she had never thought about quitting her job until that day. Apart from these arguments, Healthworks makes no assignment of error or argument disputing the judgment's award for religious discrimination existing prior to Robinson's last day of work in the form of a hostile work environment.
As indicated above, the jury was charged to consider both the claims for hostile work environment and constructive discharge. The hostile work environment claim was discussed in the jury charge as a claim which "does not affect an employee's economical [sic] benefits." Thus, the jury was made aware that damages from such hostile environment would relate to the employee's emotional pain and suffering. The issue of constructive discharge was briefly discussed in the jury charge. Factors to consider for assessing damages for such discharge were not outlined. Nevertheless, as indicated by the jurisprudence and implied in the jury charge, a successful constructive discharge claim is remedied by consideration of the economic damages *720 an employee suffers because of the loss of her job.
With these distinctions between the two claims, the jury determined that Robinson was both subjected to religious harassment (Jury Interrogatories Nos. 6 and 7) and forced to resign (Jury Interrogatory No. 10). Nevertheless, the award for damages set forth in the answer to Jury Interrogatory No. 13 was not apportioned between the two claims. The jury awarded $40,000 in damages, which, under the format of the interrogatories, can be viewed either as an award for the hostile work environment or the constructive discharge claim, or both. Healthworks did not object to the jury interrogatories to require that different damages for each claim be determined separately.
Under these circumstances, even if we were to agree with Healthworks' contesting the claim for constructive discharge, the claim for the hostile work environment remains uncontested by Healthworks' assignments of error and argument. Healthworks likewise presents no argument that $40,000 is an inappropriate award for the hostile work environment claim, and we will not disturb that award under the circumstances of this case. Accordingly, that award is affirmed, and Healthworks' assignment of error regarding Robinson's constructive discharge is without merit.
Healthworks next argues that the trial court erred in allowing Patrick and Christy Acton to testify. Robinson called them as rebuttal witnesses.
To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. La. C.E. art. 103; Stephens v. Town of Jonesboro, 25,715 (La.App.2d Cir.8/19/94), 642 So.2d 274, writs denied, 94-2351, 646 So.2d 400, 94-2557, 646 So.2d 400, 94-2577 (La.11/29/94), 646 So.2d 400.
Additionally, the plaintiff in a civil case and the state in a criminal prosecution shall have the right to rebut evidence adduced by their opponents. La. C.E. art. 611(E). The district court has great discretion in controlling the presentation of evidence, including the power to admit or refuse to admit rebuttal evidence. White v. McCoy, 552 So.2d 649 (La.App. 2d Cir. 1989). Rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749. The determination of whether evidence is rebuttal evidence and thus admissible, is referred to the sound discretion of the district court. State v. Green, 390 So.2d 1253 (La. 1980).
At the time for rebuttal, counsel for Healthworks first objected, but then withdrew his objection and admitted that the Actons could testify in rebuttal. The Actons' testimony concerned statements made by Mark Batterton that tended to impeach his testimony.[1] Defense counsel did make some hearsay objections during Patrick Acton's testimony, but those rulings have not been raised on appeal. Therefore, although Healthworks objected initially, it withdrew its objection and agreed that the Actons could testify as rebuttal witnesses for impeachment purposes. The trial court did not abuse its discretion regarding this testimony, and *721 there is no merit in this assignment of error.
In its final assignment of error, Healthworks argues that the award for religious discrimination and Robinson's constructive discharge and the award for detrimental reliance are duplicative. Additionally, in response to an inquiry from this court, both parties briefed the issue of Louisiana's at-will employment law and its impact on the detrimental reliance claim.
Detrimental reliance is addressed in the Civil Code in Article 1967, which, in the broader context of cause for a binding obligation, provides:
Cause is the reason why a party obligates itself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.
Detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Orr v. Bancroft Bag, Inc., 29,046 (La. App.2d Cir.1/22/97), 687 So.2d 1068.
The employer-employee contract is nominated as a "lease of labor" in the Civil Code. La. C.C. arts. 2746 and 2747. Article 2747 provides that while the employer is at liberty to dismiss the employee "without assigning any cause," the employee "is also free to depart without assigning any cause."
Thus, Louisiana law provides for two types of employment situations: (1) the terminable at-will contract, and (2) the limited duration contract. Nicholas v. Allstate Ins. Co., 30,735 (La.App.2d Cir.5/28/99), 739 So.2d 830, rev'd on other grounds at 99-2522 (La.8/31/00), 765 So.2d 1017; Deus v. Allstate Ins. Co., 15 F.3d 506 (5th Cir.1994), cert. denied, 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. Deus, supra; Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2d Cir.1982). Under a limited duration contract, the parties have agreed to be bound for a certain period during which the employee is not free to depart without assigning cause and the employer cannot dismiss the employee without assigning any reason for such conduct. Brodhead v. Board of Trustees for State Colleges and Universities, 588 So.2d 748, (La.App. 1st Cir.1991) writ denied, 590 So.2d 597 (La.1992).
In Stevenson v. Lavalco, Inc., 28,020 (La.App.2d Cir.2/28/96), 669 So.2d 608, writ denied, 96-0828 (La.5/17/96), 673 So.2d 611, the plaintiff moved from Connecticut to accept defendant's offer for employment in Louisiana. Approximately six months later, the defendant terminated Stevenson, and Stevenson filed suit alleging, among other things, that he had relied on the defendant's representation to his detriment. This court, in Stevenson, stated the following:
The parties to an employment arrangement such as this one, should know the risks associated with the absence of an employment contract. One of those risks is obviously termination of employment only after a short period of time. Certainly, this situation was contemplated by the legislature which made no provision for it.
* * *
Three requirements must be met in order for equitable estoppel to be applied: (1) a representation by conduct or word by the person sought to be estopped; *722 (2) justifiable reliance thereon; and (3) a change in position because of that reliance to the detriment of the party asserting estoppel. Edwards v. Conforto, 636 So.2d 901 (La.1993).
* * *
[Stevenson contends that he] ... justifiably relied on the representations made by the defendant. [He further contends that he] ... sustained a detrimental change in his position and in his family's position due to his justifiable reliance as shown in prior paragraphs.
After a thorough review of the original and amended petitions, we conclude the only allegations of representations made by Lavalco to Stevenson concerned his employment, which was at will, and his compensation package. Inherent in the "at will" nature of the employment agreement was the possibility that the employment may be terminated at any time, without any cause. Therefore, any claimed reliance on representations that the employment would be permanent or corresponding changes in position thereon are misplaced.
Id. at 611-612.
In this case, as in Stevenson, the undisputed contract which the parties entered was the employment contract. The contract's reason or cause necessarily encompassed the parties' mutual understanding that Robinson would no longer work with Johnson in her former business, but would change her position and become employed for wages at Healthworks. The opportunities and economic benefits Robinson gave up were measured against those she was to receive at Healthworks. She cannot now claim damages for the loss of her former job benefits because of her employment contract decision.[2] To insure ongoing economic benefits from her new employment contract with Healthworks, Robinson could have contracted a limited term employment contract. Yet, she does not seek as damages the loss of economic benefits under her employment contract with Healthworks,[3] and she asserts no limited term employment contract. In the absence of any assertion of term employment, the evidence indicates that her employment was at-will.
In contrast, Robinson's detrimental reliance claim asserts a separate binding obligation or contract altogether contrary to the mutual understanding of the parties' employment contract. Robinson can make no assertion that she changed her position in reliance on any promise other than Healthworks' promise under the employment contract. Healthworks rendered performance under the employment contract, and it was free to end the contract at any time.
Accordingly, under these circumstances, where Robinson entered into an at-will employment contract with Healthworks, her claim for detrimental reliance to recover losses associated with the end of her former business must be denied. The trial court's award for the detrimental reliance claim is reversed.
*723 Finally, by Robinson's answer to the appeal, she contests the trial court's award of $16,000 for attorney fees and seeks an additional attorney fee award for this appeal. Robinson's contesting of the trial court's award through her answer is the equivalent of an appeal. La. C.C.P. art. 2133. Nevertheless, in her brief to this court, she did not discuss the issue nor explain how the trial court erred or abused its discretion in making the award. Accordingly, pursuant to U.R.C.A. §§ 2-12.4 and 2-12.5, we consider Robinson's appeal of the award for attorney fees abandoned. Likewise, because of our reversal of a portion of Robinson's judgment, we decline to award additional attorney fees for this appeal.

Conclusion
For the foregoing reasons, the judgment of $40,000 for religious discrimination in favor of Regina Robinson and against Healthworks, Inc., is affirmed. The judgment of $31,200 for detrimental reliance in favor of Regina Robinson and against Healthworks, Inc., is reversed. Regina Robinson's appeal for additional attorney fees is denied. Costs of this appeal are assessed to each party equally.
AFFIRMED IN PART AND REVERSED IN PART.

APPLICATION FOR REHEARING
Before GASKINS, CARAWAY, PEATROSS, DREW, and MOORE, JJ.
Rehearing denied.
NOTES
[1] Patrick Acton testified that Mark Batterton called Robinson and Johnson "Egyptians," as a derogatory term for anyone who was not Apostolic. Christy Acton testified regarding Batterton's assertions that Healthworks intended to take over Robinson's plastic business. Batterton had denied both charges in his prior testimony.
[2] In Robinson's testimony, she asserted that the difference between the amount of pay in her former job and her wages at Healthworks was $3900 per month. She then indicated that she was seeking $3900 per month for the eight months she worked at Healthworks, or $31,200. The jury awarded that amount for Robinson's detrimental reliance claim.
[3] Robinson sought damages for the loss of economic benefits under her employment contract with Healthworks only as part of her constructive discharge claim discussed above. The $31,200 in damages she sought and received for her detrimental reliance claim were based upon her assertions regarding the loss of benefits flowing from her former job.