903 So.2d 619 (2005)
Ricky Dale MARTIN, Plaintiff-Appellee
v.
Cynthia Anderson MARTIN, Defendant-Appellant.
No. 39,631-CA.
Court of Appeal of Louisiana, Second Circuit.
May 18, 2005.
*620 Cynthia Anderson Martin, In Proper Person.
Gary Bowers, for Appellee.
Before BROWN, C.J., WILLIAMS, and CARAWAY, JJ.
BROWN, C.J.
The parties, Ricky Dale Martin and Cynthia Anderson Martin Harrison, have been before this court on five previous occasions over the course of their ongoing domestic litigation. See Martin ex rel. K.M. v. Harrison, 37,891 (La.App. 2d Cir.09/26/03), 855 So.2d 950; Martin v. Martin, 37,958 (La.App. 2d Cir.12/10/03), 862 So.2d 1081, reh. denied, writ not considered, 04-0481 (La.03/12/04), 869 So.2d *621 807; Martin v. Martin, 38,341 (La.App. 2d Cir.04/07/04), 870 So.2d 648 (not designated for publication); Martin v. Martin, 38,899 (La.App. 2d Cir.06/17/04) (dismissed as having been taken from an unappealable, interlocutory judgment); and Martin v. Martin, 39,319 (La.App. 2d Cir.02/17/05), 895 So.2d 80 (not designated for publication). Throughout most of these proceedings, Cynthia has been allowed to proceed in forma pauperis and has been unrepresented by counsel.
Inter alia, previous rulings gave Ricky custody of the parties' two children subject to supervised, limited visitation by Cynthia.[1] Because of Cynthia's refusal to comply with court orders that she and her second husband, Douglas J. Harrison, undergo mental health evaluations, which were imposed after court findings that Cynthia had acquiesced in sexual abuse committed by Harrison upon the parties' daughter and that she had pressured the child to recant her allegations against her stepfather, Cynthia has not been allowed to visit with the child.[2]
For purposes of the instant appeal, the following procedural events are relevant. On June 9, 2004, Cynthia filed a "Petition for Judicial Partition of Community Property." Thereafter, on June 16, 2004, she filed an "Expedited Motion for Visitation and Expedited Motion for a Protective Order."
On June 18, 2004, in response to Cynthia's petition for partition, Ricky filed an exception of no cause of action, motion for C.C.P. article 863 sanctions, and a motion to vacate Cynthia's pauper status. On June 29, 2004, in response to Cynthia's expedited motions, Ricky filed exceptions of prematurity, no cause of action, and res judicata, together with another motion for sanctions.
A hearing was held on July 29, 2004, and judgment was rendered in open court on that same day and signed on August 20, 2004, as follows. Ricky's June 18 exception of no cause of action was sustained and Cynthia's petition for partition of community property was dismissed; his motions for sanctions and to vacate Cynthia's pauper status, however, were denied. Cynthia was ordered to pay Ricky's court costs associated with his exception of no cause of action. She was also prohibited from filing any further pleadings with the Caddo Parish Clerk of Court until she produced written proof that she and her husband, Douglas J. Harrison, had undergone mental health evaluations.
Ricky's June 29 exceptions of prematurity, no cause of action, and res judicata were sustained and Cynthia's motions for visitation and protective orders were dismissed, as were her demands for discovery. Ricky's motion for sanctions filed in response to the expedited motions was granted and Cynthia was ordered to pay $1,250 in attorney fees, as well as costs associated with Ricky's defense of the motions filed by Cynthia.
Following the trial court's denial of Cynthia's motion for new trial she appealed. Appearing pro se, she urged several assignments of error.

Discussion

Mental Health Evaluation
Cynthia asserts that the trial court erred in issuing its latest judgment without *622 holding a hearing on her motion for visitation. According to appellant, she has neither seen her daughter in over a year nor received any information on the status or well-being of her daughter.
Cynthia also urges that the trial court committed error in preventing her from deposing any witness until she complies with the court's orders of October 24, 2003, and January 13, 2004, regarding mental health evaluations. Related to this argument are appellant's claims that the trial court erred in ordering her to pay Richard Williams, the counselor appointed to conduct the mental health examinations of the parties, because she has filed for bankruptcy and is under the protection of the federal courts, and that the trial court erred in prohibiting her from conducting discovery based upon her inability to pay Dr. Williams. Appellant also asserts that the trial court overstepped its bounds in ordering her husband, Douglas J. Harrison, to undergo a mental evaluation because he is a Texas resident and out of the reach of the Louisiana court.
In an unpublished opinion rendered just three months ago, this court addressed these assignments of error as follows:
The mental evaluations of (Cynthia) Harrison and her present husband had previously been ordered after findings that the mother had acquiesced in sexual abuse committed by the stepfather upon the child and that the mother had pressured the child to alter or recant her allegations against the stepfather. [footnote omitted]
....
The fact that Mr. Harrison is a resident of Texas is of no moment. He visited with the child in the state of Louisiana and was alleged to have behaved inappropriately in the presence of the child in violation of court orders that he have no contact with the child.
The trial court certainly had the authority and the duty to insure against further abuse. There can be no purpose for counseling and mental evaluation more urgent than the prevention of abuse of a child. Such issues are the primary concern of any court. The lower court was justified in requiring mental health evaluations before allowing any other action.
....
If even a portion of the boundless energy and unceasing efforts (Cynthia) Harrison has expended to litigate with Martin were used by her to obtain the required mental health evaluations, these matters could proceed quickly. The trial judge, who is intimately familiar with the matter, made appropriate and commendable efforts to protect this child in a patient and respectful way. The transcript shows that Harrison sought to use her bankruptcy filing to avoid complying with the court-ordered mental health evaluation. Harrison's own actions have resulted in her not having visitation with her child and in delaying this litigation. Martin v. Martin, 39,319 (La.App.2d Cir.02/17/05)[, 895 So.2d 80] (not designated for publication), pp. 4-7.
"Second verse, same as the first."[3] Nothing has changed in this case. Cynthia continues to file vexatious, harassing and repetitious petitions and motions, notwithstanding the crystal clear orders of the trial court that there will be no further proceedings until she complies with the court-ordered mental health evaluation.

*623 Partition of Community Property

Appellant asserts that the trial court erred in dismissing with prejudice her petition for partition of community property without allowing discovery or depositions.
The discovery statutes are to be liberally and broadly construed to achieve their intended objectives. Stolzle v. Safety & Systems Assurance Consultants, Inc., 02-1197 (La.05/24/02), 819 So.2d 287; Belonga v. Crescent City Dodge, L.L.C., 00-3419 (La.03/09/01), 781 So.2d 1247. A party generally may obtain discovery of any information which is relevant to the subject matter involved in the pending action. La. C.C.P. art. 1422; Stolzle, supra; Belonga, supra. There are limitations to this rule, however, when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense. La. C.C.P. art. 1426; Belonga, supra; Laburre v. East Jefferson General Hospital, 555 So.2d 1381 (La.1990).
The trial court has broad discretion in ruling on discovery matters. Belonga, supra; Adams v. Deaton, 97-1237 (La.06/30/97), 696 So.2d 997. This includes the discretion to deny discovery. Laburre, supra; Lehmann v. American Southern Home Insurance Company, 615 So.2d 923 (La.App. 1st Cir.1993), writ denied, 617 So.2d 913 (La.1993). In its discretion, the trial court can refuse or limit discovery of matters that are not relevant, unreasonably vexatious, tardily sought, or which might delay trial. Lehmann, supra; Ward v. Tenneco Oil Company, 564 So.2d 814 (La.App. 3d Cir.1990).
For the reasons expounded upon below, while it is rather unusual for a petition to be dismissed prior to discovery, in the instant case, allowing appellant to conduct discovery on her partition claim would have unnecessarily and unreasonably burdened appellee, and would have served only to delay the inevitable, which is dismissal of this frivolous claim.
On June 9, 2004, Cynthia filed a "Petition for Judicial Partition of Community Property." In response, Ricky filed an exception of no cause of action, asserting the existence of a premarital agreement of separation of property, duly executed by the parties on October 20, 1983, three days before their wedding, and recorded in the conveyance records of Caddo Parish. According to appellee, by the clear terms of this marriage contract, the parties never had a community; therefore, there is no marital property to be partitioned. On this basis, appellee asked the district court to dismiss with prejudice Cynthia's petition; Ricky also sought sanctions and revocation of appellant's in forma pauperis status. Cynthia filed an answer and reconventional demand for sanctions on July 20, 2004, attaching a number of exhibits, the first being another copy of the premarital agreement executed by the parties on October 20, 1983.
Although Ricky filed and the trial court sustained an exception of no cause of action dismissing Cynthia's partition claim, we observe that the proper exception was actually one of no right of action. The caption of the pleading does not control; the court is obligated to determine its substance. Cox v. Boggs, 39,566 (La.App. 2d Cir.04/06/05), 899 So.2d 770; Ford Motor Credit Company v. Brown, 32,995 (La.App. 2d Cir.04/05/00), 756 So.2d 654.
Although they are often confused and/or improperly combined in the same exception, the peremptory exceptions of no cause of action and no right of action are separate and distinct. La. C.C.P. art. 927(4) and (5); Industrial Companies, Inc. v. Durbin, 02-0665 (La.01/28/03), 837 So.2d 1207; Downs v. Hammett Properties, Inc., *624 39,568 (La.App. 2d Cir.04/06/05), 899 So.2d 792. An exception of no cause of action focuses on whether the law provides a remedy against the particular defendant, while the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit. Id.
In deciding whether a petition states a cause of action, the court must accept well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Edwards v. Edwards, 35,953, 35,954 (La.App. 2d Cir.05/08/02), 817 So.2d 414; Arledge v. Hendricks, 30,588 (La.App. 2d Cir.06/26/98), 715 So.2d 135, writ denied, 98-2015 (La.11/20/98), 728 So.2d 1287.
Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681; Jones v. Bethard, 39,575 (La.App. 2d Cir.04/13/05), 900 So.2d 1081. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885; Jones, supra; Tri-State Sand & Gravel, L.L.C. v. Cox, 38,217 (La.App. 2d Cir.04/07/04), 871 So.2d 1253, writ denied, 04-1357 (La.09/24/04), 882 So.2d 1144. The trial or appellate court may notice the objection of no right of action on its own motion. La. C.C.P. arts. 927(B) and 2163. Whether a plaintiff has a right of action is a question of law.
After termination of a community property regime, the provisions governing co-ownership apply to the former community property. La. C.C. art. 2369.1; Edwards v. Edwards, 35,953, 35,954 (La.App. 2d Cir.05/08/02), 817 So.2d 414. Any co-owner has the right to demand partition of a thing held in indivision. La. C.C. art. 807; Edwards, supra. A plaintiff in a partition action must establish her claim to the property; she must prove that she is a co-owner with the defendant, similar to a petitory action. Doyal v. Pickett, 628 So.2d 184 (La.App. 2d Cir.1993); Taylor v. Williams, 107 So.2d 319 (La.App. 2d Cir.1958). It is fundamental that to maintain an action in partition, the party provoking the suit must own an interest in the property sought to be divided. Dipuma v. Anselmo, 137 So.2d 76 (La.App. 1st Cir.1962). Without some ownership, the plaintiff is without a right of action. Neck v. Neck, 169 So.2d 401 (La.App. 3d Cir.1964); Dipuma, supra.
In the instant case, not only has appellant failed to establish her co-ownership, she has failed to establish the existence of any community property. Attached to Ricky's exception and motion for sanctions was a copy of the premarital agreement executed by the parties. A copy of this contract was also appended to Cynthia's "answer" and reconventional demand filed in response to appellee's exception. In support of her claim that there was a community in existence between the parties, Cynthia refers to a couple of emails, a letter written by Ricky four years before the parties' divorce, and alleged admissions made by appellee's attorney in court to the effect that there were community property issues between the parties.[4] This forms the entirety of the *625 basis for appellant's claim that the parties had a community of acquets and gains.
Louisiana Civil Code Articles 2329 and 2331 provide in part that spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. A premarital contract does not have to receive prior court approval, although an agreement modifying or terminating a matrimonial regime executed during the marriage does. La. C.C. art. 2329.
In the instant case, the parties' premarital agreement is a one-page document wherein they specifically and clearly contracted against the creation of a community of acquets and gains, opting instead for a separate property regime from the outset of their marital relationship. This marriage contract was by authentic act, attested to by two witnesses and a notary public, and filed and recorded in the Caddo Parish Conveyance Records on November 2, 1983. Nothing appellant argued or alleged in any way undermined the legality of this contractual agreement between the parties, or established a subsequent modification of their marital regime from one of separation of property to one of acquets and gains.
Cynthia also claims that the separate property agreement entered into by her and Ricky Martin prior to their marriage is null and void. For the reasons set forth above, this assignment of error lacks merit. Furthermore, in her brief she neither addresses this issue nor explains how the trial court erred or abused its discretion in its ruling. See Robinson v. Healthworks International, L.L.C., 36,802 (La.App. 2d Cir.01/29/03), 837 So.2d 714, writ not considered, 03-0965 (La.05/16/03), 843 So.2d 1120. All specifications of error must be briefed and the court may consider as abandoned any assignment of error which has not been briefed. Uniform Rules, Courts of Appeal, Rule 2-12.4; Henry v. Henry, 02-147 (La.App. 5th Cir.06/26/02), 825 So.2d 548.

Access to Court and Pauper Status
Cynthia urges that the trial court erred when it ordered the Caddo Parish Clerk of Court not to accept any further filings from her unless written proof of compliance with the court ordered mental health evaluation was attached thereto. Cynthia feels that this order is a violation of her civil rights.
La. Const. Art. I, § 22 provides that all courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights. The right of access to the courts is basic to our system of government and is one of the fundamental rights protected by the United States and Louisiana Constitutions. Ryland v. Shapiro, 708 F.2d 967 (5th Cir.(La.) 1983), on remand, 586 F.Supp. 1495 (W.D.La.1984); Succession of Ratcliff v. Fruge, 99-575 (La.App. 3d Cir.12/08/99), 755 So.2d 918.
In forma pauperiswhich is Latin for "in the manner of a pauper"statutes and court rules allow indigent litigants to proceed without paying court filing fees and costs. Litigating a claim in forma pauperis is a privilege, not a luxury or a right. Benjamin v. National Super Markets, Inc., 351 So.2d 138 (La.1977), writ denied, 366 So.2d 561 (La.1979); Jolivette v. Jolivette, 386 So.2d 707 (La.App. 3d Cir.1980). The privilege to proceed in forma pauperis is set forth in La. C.C.P. art. 5181, which provides in part that:
An individual who is unable to pay the costs of court, because of his poverty *626 and lack of means, may prosecute or defend a judicial proceeding in any trial or appellate court without paying the costs in advance, or as they accrue, or furnishing security therefor.
The United States Supreme Court has repeatedly held that a litigant's access to the courts may be limited to preserve court resources. See Brown v. Williams, 522 U.S. 1, 118 S.Ct. 1, 139 L.Ed.2d 1 (1997); Shieh v. Kakita, 517 U.S. 343, 116 S.Ct. 1311, 134 L.Ed.2d 464 (1996); Whitaker v. Superior Court of California, San Francisco County, 514 U.S. 208, 115 S.Ct. 1446, 131 L.Ed.2d 324 (1995); Martin v. District of Columbia Court of Appeals, 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992); Zatko v. California, 502 U.S. 16, 112 S.Ct. 355, 116 L.Ed.2d 293 (1991). Noting the deleterious effect such patterns of abuse have on the courts' fair allocation of judicial resources, the court reiterated that it was their responsibility for seeing that court resources are allocated in a way that promotes the interests of justice. Martin, 506 U.S. at 3, 113 S.Ct. at 398.
Clearly, the placement of reasonable limits on the filings of litigants who abuse the judicial system is justified. This includes restrictions on the right to file in forma pauperis. As noted by the Supreme Court in Zatko, 502 U.S. at 17, 112 S.Ct. at 356, it is vital that the right to file in forma pauperis not to be encumbered by those who would abuse the integrity of the judicial process by frivolous filings. In forma pauperis petitioners lack the financial disincentivesfiling fees and attorney's feesthat help to deter other litigants from filing frivolous petitions. Id.
The trial judge declined to grant appellee's motion to revoke Cynthia's pauper status (and appellee chose not to appeal this finding); however, the trial court ordered the Caddo Clerk of Court to refuse all further filings unless and until written proof of appellant's (and her current husband's) compliance with the court-ordered mental health examination is filed into the record. We are, however, aware that appellant may at some time in the future decide to submit to the court-ordered evaluations.[5] Should this happen, this court points out the following excerpted portion from La. C.C.P. Art. 5183(B):
The court may reconsider such an order [to litigate without payment of costs] on its own motion at any time in a contradictory hearing.
La. C.C.P. Art. 5184 provides that when a litigant becomes able to pay court costs subsequent to being permitted to proceed in forma pauperis, such costs may be taxed against her and the right may be revoked. Furthermore, article 5184 affords to Ricky, the Caddo Clerk of Court, and/or the trial court the right to traverse Cynthia's affidavit(s) of poverty and file a rule to show cause why the court order permitting her to litigate without paying costs in advance or as they accrue should not be rescinded.
Contrary to Cynthia's assertion that her right of access to the court has been unlawfully denied by the trial court, we find, as set forth several times above, that appellant's access to the courts is limited by her own willful and blatant disobedience of the trial court's clear order that she submit to a mental health examination before any further activity, be that filings of any sort, hearings or proceedings of any kind, or the resumption of visitation with her daughter, will occur in this case. Considering the fact that the state has a compelling interest in protecting children from sexual abuse, the trial court was certainly *627 well within its discretion in ordering the mental health examinations before this matter is allowed to proceed any further.[6]See Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Buchanan v. Langston, 36,520 (La.App. 2d Cir.09/18/02), 827 So.2d 1186.

Trial Errors
Cynthia complains that the trial court allowed appellee's attorney to address the court, but did not grant her the same courtesy. The transcript reflects no such thing. In fact, it shows that the trial court allowed Cynthia to speak and present her motions, notwithstanding the fact that the majority of the issues raised in them had been addressed on previous occasions. Furthermore, the transcript shows that the trial court maintained its courteous and respectful manner, in spite of the unwillingness or inability on the part of appellant to grasp the rudimentary reality that these proceedings are, quite simply, at a standstill until she and her husband comply with the court-ordered mental evaluations.

Conclusion
For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed to appellant, Cynthia Anderson Martin Henderson.
AFFIRMED.
NOTES
[1] The parties' oldest child, a son, has, during the course of these proceedings, been emancipated by notarial act.
[2] Ricky alleges that, as of the date of the filing of his appellate brief, December 20, 2004, Douglas J. Harrison had been indicted by a grand jury for the sexual molestation of the parties' daughter and that this criminal matter is pending.
[3] Herman's Hermits, "Henry the Eighth."
[4] We reviewed the record closely for such "admissions" and, not so surprisingly, found none.
[5] Obviously this will not occur as long as Mr. Harrison is under criminal indictment.
[6] Mental health evaluations were ordered not only for Cynthia and her current husband, but for Ricky and the parties' child as well.