643 So.2d 836 (1994)
Jennifer ALPHONSE
v.
OMNI HOTELS MANAGEMENT CORP., et al.
No. 94-CA-0157.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
*837 J. Douglas Sunseri, Nicaud & Sunseri, Metairie, for plaintiff-appellee Jennifer Alphonse.
Michael S. Mitchell, Audrey N. Browne, Fisher & Phillips, New Orleans, for defendant-appellant Omni Hotels Management Corp.
Before KLEES, CIACCIO and ARMSTRONG, JJ.
KLEES, Judge.
Appellee, Jennifer Alphonse, filed suit against appellant, Omni Hotels Management Corporation (OMNI), for an alleged violation of R.S. 23:1006 by one of its employees, Frank Gianelli. Ms. Alphonse was employed by appellant (doing business in New Orleans as the Omni Royal Orleans Hotel) from January of 1987 until her resignation in May of 1990. She alleged that her immediate superior, Mr. Gianelli, sexually harassed her until she was forced to resign. More specifically, Ms. Alphonse alleged that initially Mr. Gianelli ordered her to have meals with him at the hotel, to take walks with him at lunch in *838 the French Quarter, to accompany him to hotel functions as his date, to ride to and from work with him, and generally to hold Ms. Alphonse out as "his showpiece." Sometime in late 1989, however, Mr. Gianelli's attitude toward Ms. Alphonse changed and he began to berate her at work, to assign additional duties to her without additional pay or proper training, to scream at her that she was a "weak woman," and, if she cried because of his alleged ill treatment, to scream that she "must be on her period."
In late April of 1990, Mr. Gianelli allegedly visited the hospital where Ms. Alphonse's mother was recovering from a stroke. He ordered Ms. Alphonse to be at work on Monday stating that there was nothing wrong with her mother. When Ms. Alphonse returned to work on Monday, she resigned her position.
A bench trial was held on May 19 and 20, 1993. The court found for the plaintiff and awarded her $12,333.00 backpay, $85,000.00 general damages, $680.25 special damages, and $16,500.00 attorney's fees.
OMNI claims that the trial court erred in finding that Ms. Alphonse's trial testimony credibly established a prima facie case of sexual harassment; in determining that Alphonse established a violation of R.S. 23:1006; and, in awarding Alphonse general damages of $85,000.00 and attorney's fees of $16,500.00.
It is well settled that a court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978). Further, when findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 549 So.2d at 844; Canter v. Koehring, 283 So.2d 716, 724 (La.1973). After considering the record as a whole, we conclude that the trial court was not manifestly erroneous in its finding that Ms. Alphonse's testimony was credible.
Appellant further contends that Ms. Alphonse failed to establish a prima facie case of sexual harassment under R.S. 23:1006. This statute prohibits intentional discrimination on the basis of race, color, religion, sex or national origin. Because the Louisiana statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana courts have routinely looked to the federal statute for guidance in determining whether a claim for sexual harassment has been asserted. Bennett v. Corroon and Black Corp., 517 So.2d 1245 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988).
Title VII claims can be based on two different types of sexual harassment"quid pro quo" or "hostile environment." "Quid pro quo" harassment exists when an employer places unwanted terms or conditions on employment, benefits or other employment advantages in exchange for sexual favors. A "hostile environment" is harassment that, while not affecting economic benefits, creates a hostile or offensive working environment. Meritor Savings Bank v. Vinson, 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986); Bennett, 517 So.2d at 1247.
It is apparent from the record that Ms. Alphonse's claim was based on "hostile environment" sexual harassment. A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. To prevail in a sexual harassment action based on hostile environment, a plaintiff must assert and prove that:
1) she belonged to a protected group;
2) she was subjected to unwelcome sexual harassment;
3) the harassment was based on sex;
4) the harassment affected a term, condition, or privilege of employment; and

*839 5) the employer knew or should have known of the harassment and failed to take proper remedial action.
Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900 (11th Cir.1988).
The trial court in the instant case found that Ms. Alphonse belonged to a protected group. OMNI attempted to remove this issue from the purview of Title VII because Ms. Alphonse is a heterosexual female and Mr. Gianelli was a homosexual male. However, those facts are irrelevant. Sex discrimination under Title VII is not limited to disparate treatment founded solely or categorically on gender; rather such discrimination "is sex discrimination whenever, sex, for no legitimate reason is a substantial factor in the discrimination." Bundy v. Jackson, 641 F.2d 934, 942-43 (D.C.Cir.1981). We agree with the trial court on this element.
The second element is whether the sexual harassment was unwelcome, that is, it was not solicited or desired by the plaintiff. Yates v. Avco Corp., 819 F.2d 630 (6th Cir. 1987). OMNI alleged that Ms. Alphonse willingly accepted preferential treatment from Mr. Gianelli, including having other employees demoted or passed over for promotion to allow her to advance in her position. Also, that Ms. Alphonse solicited the invitations for lunches, dinners, and walks through the French Quarter. Ms. Alphonse denied all of these allegations at trial. The trial court found that the evidence produced by OMNI concerning Ms. Alphonse's alleged solicitation of Mr. Gianelli's conduct was inadequate. Rather, the court found Ms. Alphonse's testimony and other evidence produced at trial on her behalf to be the more credible. We do not find the trial court manifestly erroneous in this finding of fact, and therefore, will not upset such a finding on review.
The third element to consider is whether the harassment was based on plaintiff's sex. OMNI argues that if plaintiff was harassed at all, it was work-related and not sex-related. It claims that Mr. Gianelli treated all subordinates in an equally offensive manner, without regard for their sex. However, Ms. Alphonse testified that Mr. Gianelli repeatedly made improper references to her legs and breasts. This latter reference was corroborated by Ms. Alphonse's sister. Ms. Alphonse also testified that Mr. Gianelli continuously berated her for being a "weak woman," and that any emotional upset displayed by Ms. Alphonse was due to her menstrual cycle.
Courts have consistently held that sexual harassment need not take the form of sexual advances or of other instances with sexual overtones. Rather, any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII. Hicks v. Gates Rubber Co., 928 F.2d 966, 971 (10th Cir.1991); Hall v. Gus Const. Co., Inc., 842 F.2d 1010 (8th Cir.1988). Ms. Alphonse introduced substantial evidence of sexual harassment and verbal abuse under the above standard and the trial judge found this evidence to be credible. Again, we do not find the trial judge manifestly erroneous in his finding of fact, and thus will not upset such a finding on review.
The fourth element to consider is whether the harassment affected a term, condition or privilege of plaintiff's employment. The United States Supreme Court recently affirmed its holding in Meritor, stating that when the workplace is permeated with "discriminatory intimidation, ridicule, and insult, that is `sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." Harris v. Forklift Systems, Inc., ___ U.S. ___, ___, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); Meritor, 477 U.S. at 67, 106 S.Ct. at 2405. The Court further explained that to determine if a work environment is discriminatorily abusive, a trier of fact must look at all the circumstances. The factors may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is only one factor to consider, but is not by *840 itself, determinative. Rather, the Court reiterated that the language of Title VII "evinces a congressional intent `to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris, ___ U.S. at ___, 114 S.Ct. at 370; Meritor, 477 U.S. at 64, 106 S.Ct. at 2405.
The Court also affirmed Meritor's holding that the proper standard is somewhere between "mere utterance of an ... epithet which engenders offensive feelings in an employee," and conduct that leads to a nervous breakdown. The Court pointed out that a discriminatorily abusive work environment, even if it did not seriously affect an employee's psychological well-being, could detract from an employee's job performance, discourage an employee from remaining on the job, or keep him or her from advancing in that career. The Court stated that the conduct alleged in Meritor presented some "especially egregious examples of harassment," but did not "mark the boundary of what is actionable." Id., ___ U.S. at ___, 114 S.Ct. at 371.
OMNI defended this element by claiming that Mr. Gianelli managed by intimidation and screamed at all his employees, both male and female. Further, OMNI claimed that the alleged comments to Ms. Alphonse about being a "weak woman" and about her menstrual cycle were never made because no one else heard Mr. Gianelli make such comments. Ms. Alphonse testified that the incidents of harassment did occur, that she sought medical help because of her emotional distress, and was ultimately forced to resign from her job because of the harassment. OMNI did not offer any evidence to refute the allegations. The trial court found Ms. Alphonse's testimony to be credible and sufficient to establish her claims. The trial court also found Mr. Gianelli's behavior toward Ms. Alphonse created an abusive and hostile work environment. We find no error in these findings.
The final element to be satisfied concerns OMNI's liability for Mr. Gianelli's actions. More specifically, did OMNI know or should it have known of the harassment and did it fail to take proper remedial action. Under Title VII, liability attaches to the employer only if it is shown that the conduct occurred within the course and scope of the harasser's employment, and the employer failed to prevent or correct the situation. The existence of liability is a question of fact.
To find liability of an employer under the doctrine of respondeat superior there must exist:
1) an employer/employee relationship;
2) a negligent or tortious act on the part of an employee; and
3) the act complained of must be committed in the course and scope of employment.
Bennett, 517 So.2d at 1248; Moreau v. Landry, 305 So.2d 671 (La.App. 1st Cir.1974). The trial court found these three elements were factually satisfied. There was clearly an employer/employee relationship, Mr. Gianelli was negligent, and the particular acts of negligence were committed within the course and scope of his employment.
Liability can only be assessed, however, if OMNI knew or should have known about the prohibited actions of Mr. Gianelli but failed to take steps to correct them. Under Title VII, "absence of notice to an employer does not necessarily insulate that employer from liability." Meritor, 477 U.S. at 72, 106 S.Ct. at 2408. Further, notice can be constructive. The trial court found that OMNI knew or should have known after reasonably diligent inquiry that Mr. Gianelli was harassing Ms. Alphonse because of her repeated attempts to report Mr. Gianelli's offensive behavior. These attempts were corroborated by OMNI's own personnel director. This was a factual finding by the trial court which we conclude was not clearly erroneous.
The last assignment of error by appellant is that the trial court erred in awarding general damages of $85,000.00 and attorney's fees of $16,500.00. For an appellate court to disturb a damage award, there must be clear evidence in the record that the trier of fact abused its discretion. Coco v. Winston Industries, 341 So.2d 332 (La.1976). A resort to prior awards is appropriate only *841 if the appeal court determines there was indeed an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). The reviewing court must evaluate the particular injuries and their effects on the particular injured persons. Reck, supra. Using these criteria, we find that the trial court did not abuse its discretion in its general damage award for the injuries Ms. Alphonse sustained.
OMNI further contends that the trial court erred in making an excessive award of attorney's fees. It asserts that plaintiff's attorney did not submit time sheets to substantiate his time expended in the matter, nor did he submit evidence of his standard rate.
The amount of costs and attorney's fees to be awarded is a matter within the sound discretion of the trial court. Ourso v. Ourso, 482 So.2d 824 (La.App. 4th Cir.1986), writ denied, 484 So.2d 139 (La. 1986). A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award because the record will reflect the time expended on the matter. Angelica v. Angelica, 608 So.2d 256 (La.App. 5th Cir.1992), writ denied, 612 So.2d 65 (La.1993).
It is the duty of the reviewing court to determine if an attorney fee award is reasonable and not an abuse of the trial court's discretion. Among the factors to consider to determine the reasonableness of the award are: (1) the ultimate result obtained; (2) the amount of money involved; (3) the extent and character of the work performed; (4) the legal knowledge, attainment and skill of the attorney; and, (5) the number of appearances made. State, DOTD v. Jacob, 491 So.2d 138 (La.App. 3d Cir.1986), writ denied, 496 So.2d 331 (La.1986). Based on a review of the record and the trial court's reasons for judgment, we affirm the award of attorney's fees.
AFFIRMED.