863 So.2d 577 (2003)
Charlotte ST. ROMAIN
v.
STATE of Louisiana, THROUGH THE DEPARTMENT OF WILDLIFE AND FISHERIES and Lyle Soniat.
No. 2003 CA 0291.
Court of Appeal of Louisiana, First Circuit.
November 12, 2003.
Rehearing Denied December 11, 2003.
*581 Jill L. Craft, Baton Rouge, Counsel for Plaintiff/Second Appellant Charlotte St. Romain.
Stephanie B. LaBorde, Baton Rouge, Counsel for Defendants/First Appellants State of Louisiana, through the Department of Wildlife and Fisheries and Lyle Soniat.
Before: WHIPPLE, KUHN, and MCDONALD, JJ.
KUHN, J.
Plaintiff-appellant, Charlotte St. Romain, appeals a judgment dismissing from her lawsuit her "state law claims for sexual discrimination" as well as her "sexual harassment claims"[1] against defendants, State of Louisiana, Department of Wildlife and Fisheries (DWF) and Lyle Soniat.[2] We reverse and remand for further proceedings.

I. FACTUAL AND PROCEDURAL BACKGROUND
St. Romain was hired by DWF as a Wildlife Educator Supervisor in April 1999. On May 12, 2000, she was released from her employment obligations.
On November 2, 2000, St. Romain filed this lawsuit naming DWF and her immediate supervisor, Soniat, as defendants, averring that she was wrongfully released from employment because she complained that Soniat created a sexually hostile working environment which DWF permitted to persist. In July 2002, defendants filed a motion for summary judgment seeking dismissal of, among other things,[3] St. Romain's "state law claims of sexual discrimination" and her "sexual harassment claims."
After a hearing, the trial court signed a judgment, which expressly stated St. Romain's "claims of sexual harassment are subject to the exclusive jurisdiction of the [Civil Service Commission (CSC) ]." In addition, summary judgment was granted to defendants, expressly dismissing St. Romain's "sexual harassment claims." The judgment signed by the trial court also provides that St. Romain's "state law claims of sexual discrimination are likewise subject to the exclusive jurisdiction of the [CSC]" and, therefore, dismissed.[4] This appeal by St. Romain followed.

*582 II. SUBJECT MATTER JURISDICTION
Louisiana Constitution article V, § 16(A)(1), addressing the original jurisdiction of our state's district courts, provides in pertinent part, "Except as otherwise authorized by this constitution or except as ... provided by law ... a district court shall have original jurisdiction of all civil ... matters."[5] Louisiana Constitution article V, § 16(A) vests jurisdiction over all civil and criminal matters in the district courts of Louisiana except as otherwise authorized by the Constitution. A constitutionally-authorized exception to the district courts' jurisdiction is set forth in La. Const. art. X, § 12(A), which grants to the CSC in the civil service context "the exclusive power and authority to hear and decide all removal and disciplinary cases." While La. Const. art. X, § 12(A) expressly establishes that the CSC has exclusive original jurisdiction over all removal and disciplinary cases, it is silent on discrimination cases. See La. Dep't of Agriculture and Forestry v. Sumrall, 98-1587, p. 6 (La.3/2/99), 728 So.2d 1254, 1259.
Louisiana Constitution article X, § 8 states:
(A) Disciplinary Actions. No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
(B) Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the employee.
Thus, in order to assess the CSC's quasi-judicial authority, La. Const. art. X, § 8(B) must be read together with § 12. Sumrall, 98-1587 at pp. 6-7, 728 So.2d at 1259.
*583 Such a reading shows that the constitution limits the jurisdiction of the CSC to two categories of claims: (1) discrimination claims provided for in § 8(B); and (2) removal or disciplinary claims provided for in §§ 12(A) & 8(A).
St. Romain challenges the trial court's conclusion that under La. Const. art. X, § 8(B), the CSC has the exclusive jurisdiction over her claims for damages for sexual harassment as well as her state claims of sexual discrimination. She urges that because she served under a probationary appointment, she falls outside the ambit of jurisdiction constitutionally allotted to the CSC. Therefore, St. Romain urges under La. Const. art. V, § 16(A), she properly filed all her claims for damages in district court.
At the outset, we note it is undisputed St. Romain served as a Wildlife Educator Supervisor under a probationary appointment. St. Romain was separated from employment when she failed to obtain permanent status after a twelve-month probationary period.[6]
Unless constitutionally infirmed, a civil service rule has the effect of law. See Bannister v. Dep't of Streets, 95-0404, p. 5 (La.1/16/96), 666 So.2d 641, 645. Thus, in addition to article X of the Louisiana Constitution, it is appropriate to look to the Civil Service Rules for an understanding of a probationary appointment.
"Probationary appointment" is defined in Civil Service Rule 1.26 as an "appointment of a person to serve a working test period in a position." Rule 1.25 explains that a "position" is "any office and any employment in the Classified Service." Permanent appointments and promotions in the classified service shall be made only after certification as ascertained by examination which, as far as practical, shall be competitive. La. Const. art. X, § 7. A probationary employee may be separated by the appointing authority at any time. Civil Service Rule 9.1(e). This is because a probationary employee has no property right in retaining his position. See Truax v. Dep't of Public Safety and Corrections, 93-1574, p. 5 (La.App. 1st Cir.6/27/94), 640 So.2d 1389, 1391. Thus, the mandatory determination of cause justifying the appointing authority's decision to undertake a disciplinary action against a "person who has gained permanent status in the classified state service" of La. Const. art. X, § 8A is not a protection afforded to a probationary employee. Id. Lacking a property right in his or her position, elimination of the cause determination for a probationary employee subjected to a disciplinary action is not offensive to the provisions of La. Const. art. X, which are designed to protect career employees from political discrimination by eliminating the "spoils" system. See AFSCME, Council # 17 v. State ex rel. Dep't of Health and Hospitals, 01-0422, p. 6 (La.6/29/01), 789 So.2d 1263, 1268.
In Sumrall, the court examined, among other rules, former Civil Service Rule 13.10, entitled "Appeals to the Commission," in reaching its conclusion that the Civil Service rules which purported to authorize appeals to the CSC on discrimination claims other than those based upon the classified employee's political or religious beliefs, sex, or race were unconstitutional. 98-1587 at p. 10, 728 So.2d at 1262. According to subsection (f) of former Rule 13.10, an appeal could be made to [the CSC] by:

*584 Any person who shall have applied for or been examined for the Classified Service, without having acquired permanent status therein, and who alleges discrimination in the review of his application, admission to an examination, scoring of examinations, the establishment of an eligible list or certification therefrom....
The Sumrall court held that La. Const. art. X, § 10 did not include in its extensive list of rulemaking power the authority to enact rules to expand the jurisdiction of the CSC, expressly including subsection (f) of Rule 13.10 among those rules that purported to created a right to appeal to the CSC distinct from those listed in La. Const. art. X, §§ 8 and 12(A), which thereby expanded the CSC's jurisdiction to hear appeals. 98-1587 at p. 10, 728 So.2d at 1262.
Under La. Const. art. X, § 7, permanent appointments in the classified service are constitutionally permissible only after certification by the appropriate Civil Service authority. Also see Civil Service Rule 9.2(a) (providing that the permanent appointment of a probationary employee shall begin upon certification by the appointing authority that the employee has met the required standard of work during the probationary period). Therefore, subsection (f) of former Civil Service Rule 13.10 included in its scope the claims of a probationary employee who alleged discrimination in his or her attempt to gain permanent status. Also see Williams v. Chief Administrative Officer, 398 So.2d 1252 (La.App. 4th Cir.1981) (holding that substantively identical predecessor rule of former Civil Service Rule 13.10(f) was the exclusive provision a probationary employee had to appeal his claim of discrimination). Thus, from the Sumrall court's articulation of the scope of the CSC's jurisdiction of La. Const. art. X, § 8(B) claims, we conclude that the claims of a probationary employee alleging discrimination in the review of his or her application to gain permanent status pursuant to La. Const. art. X, § 7 fall outside the ambit of the CSC's jurisdiction.
Accordingly, we hold that the claims of sexual discrimination and/or sexual harassment alleged in probationary employee St. Romain's petition are not included in the parameters of the jurisdiction afforded to the CSC under La. art. X, §§ 8 and 12(A). As such, St. Romain properly filed her suit in district court. See La. Const. art. V, § 16(A). Thus, that portion of the trial court's judgment which concludes it lacks jurisdiction over "plaintiff's state law claims of sexual discrimination" is vacated. And that portion of the judgment which states, "In addition, the Court finds that plaintiff's claims of sexual harassment are subject to the exclusive jurisdiction of the [CSC] and are not properly raised in the first instance in the District Court," is also vacated.

III. SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).
*585 The initial burden of proof is on the mover to show that no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2). However, once the mover has made a prima facie showing that the motion should be granted, if the non-movant bears the burden of proof at trial on the issue before the court, the burden shifts to him to present evidence demonstrating that material factual issues remain. La. C.C.P. art. 966(C)(2); J. Ray McDermott, Inc. v. Morrison, 96-2337, pp. 10-11 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202-03, writs denied, 97-3055, 97-3061, 97-3062, 97-3063 (La.2/13/98), 709 So.2d 753, 754.
A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact. Murphy v. L & L Marine Transp., Inc., 97-33, p. 6 (La.App. 5th Cir.5/28/97), 695 So.2d 1045, 1048. An attachment to a memorandum is not properly before the court on a motion for summary judgment and should not be considered in resolving the motion. State v. Exxon Corp., 95-2501, pp. 7-8 (La.App. 1st Cir.6/28/96), 676 So.2d 783, 787. Unless the motion has been made and supported by affidavits, together with sworn or certified copies of all papers or documents referred to, or depositions or answers to interrogatories, La. C.C.P. art. 967 does not shift the burden to the adverse party to set forth specific facts showing that there is a genuine issue for trial. Kennington v. H. Blume Johnson, Inc., 94-0744, p. 2 (La.7/1/94), 638 So.2d 1066, 1067.
In its oral reasons for judgment, the trial court stated:
I READ EVERY PAGE OF EVERY DEPOSITION THAT I WAS GIVEN, NO MATTER WHO SUBMITTED IT OR WHAT PAGES I WAS CITED TO, BUT I DID READ EVERYTHING THAT WAS IN THERE. I ALSO REVIEWED ALL THE OTHER DOCUMENTARY EVIDENCE WHICH INCLUDES BUT IS NOT LIMITED TO THE CIVIL SERVICE COMPLAINT FILED BY MS. ST. ROMAIN, THE PINK SLIP THAT WAS GIVEN TO MS. ST. ROMAIN WHEN SHE WAS DISCHARGED, THE DECISION OF THE CIVIL SERVICE REFEREE, THE FILINGS MS. ST. ROMAIN MADE WITH THE E.E.O.C., THE WORKPLACE VIOLENCE REPORTS THAT SHE FILED IN OCTOBER 1999 ALONG WITH ALL THE VARIOUS CORRESPONDENCE AND E-MAILS THAT WERE EITHER ATTACHED TO THE DEPOSITIONS OR WERE ADMITTED SEPARATELY FOR THE PURPOSES OF [THIS MOTION].
Because a document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact, the trial court clearly exceeded the scope of his authority in consideration of whether defendants are entitled to summary judgment. Thus, we limit our de novo review of the trial court's grant of summary judgment to a consideration of the pleadings and the depositions, which were the only permissible items properly before the court in this case. See La. C.C.P. art. 966(B).
The applicable substantive law determines the materiality of facts in a summary judgment setting. See J. Ray McDermott, Inc., 96-2337 at p. 11, 705 *586 So.2d at 203. Therefore, we now turn to a discussion of the state and federal law proscribing sexual harassment in the employment context, which is the substantive law applicable to the facts of this case in this appeal.
In the Prohibited Discrimination in Employment on the Basis of Race, Color, Religion, Sex and National Origin Act (Louisiana's Prohibited Discrimination Act), set forth in La. R.S. 23:332 et seq., Louisiana statutorily affords protection from discrimination to employees. Louisiana's Prohibited Discrimination Act is expressly applicable to "the state, or any state agency." See La. R.S. 23:302(2). And because La. R.S. 23:332 A mirrors federal law, 42 U.S.C.A. § 2000e et seq. (Title VII claims), Louisiana courts routinely look to federal jurisprudence for guidance in application of Louisiana's Prohibited Discrimination Act. See Robinson v. Healthworks Intern., L.L.C., 36,802, p. 5 (La. App.2d Cir.1/29/03), 837 So.2d 714, 718, writ not considered, XXXX-XXXX (La.5/16/03), 843 So.2d 1120.
In Title VII claims, under 42 U.S.C.A. § 2000e-2(a)(1), as well as in cases applying Louisiana's Prohibited Discriminatory Practice Act, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986); Alphonse v. Omni Hotels Management Corp., 94-0157, p. 2 (La.App. 4th Cir.9/29/94), 643 So.2d 836, 838.[7]
Liability under both Louisiana's Prohibited Discrimination Act and Title VII claims may be predicated on two types of sexual harassment"quid pro quo" or "hostile environment." "Quid pro quo" harassment exists when an employer places unwanted terms or conditions on employment, benefits or other employment advantages in exchange for sexual favors. A "hostile environment" is harassment that, while not affecting economic benefits, creates a hostile or offensive working environment. Vinson, 477 U.S. at 64-65, 106 S.Ct. at 2404-05; Alphonse v. Omni Hotels *587 Management Corp., 94-0157 at p. 2, 643 So.2d at 838.
To prevail in a sexual harassment action based on hostile environment, a plaintiff must assert and prove that she belonged to a protected group; she was subjected to unwelcome sexual harassment; the harassment was based on sex; the harassment affected a term, condition, or privilege of employment; and the employer knew or should have known of the harassment and failed to take proper remedial action. Id.
In granting summary judgment the trial court concluded that defendants, as movers on the motion, established that the harassment St. Romain was subjected to by Soniat was not based on her sex. The trial court stated:
I CERTAINLY CONCLUDE THAT THE ACTIONS OF MR. SONIAT WERE OUTRAGEOUS AND INTOLERABLE... THEY WERE CERTAINLY BOORISH AND OFFENSIVE. BUT I DO NOT SEE EVIDENCE THAT THEY WERE SEXUALLY BASED OR SEXUALLY DISCRIMINATORY. COMPLAINTS IDENTICAL IN NATURE TO THOSE OF MS. ST. ROMAIN CAME FROM MALES AND FEMALES ALIKE.
While direct comparative evidence of how an alleged harasser treated members of both sexes in the mixed-sexed workplace may remove all material facts on the issue of whether the harassment is based on sex in a same sex harassment case, see Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80-81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). St. Romain's hostile work environment claims are not allegations of same sex harassment. Thus, we find the fact that Soniat was offensive and boorish to members of both sexes is not dispositive of the issue of whether the harassment was based on sex.
To be actionable, harassing conduct need not be motivated by sexual desire. Oncale, 523 U.S. at 80, 118 S.Ct. at 1002. And a harassment claim does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex. Id. To prove that a hostile work environment claim is based on sex, the critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Id.
Thus, in our de novo review of the allegations of the pleadings and the deposition testimony, we focus not on the issue of whether Soniat was offensive and boorish to both male and female employees; rather, we ask if St. Romain has set forth facts from which a reasonable trier of fact could conclude women at DWF were exposed to disadvantageous terms or conditions of employment to which men were not.
St. Romain testified of the hostile management practices of supervisor, Lyle Soniat, to whom St. Romain's immediate supervisor Wayne Huston answered in the DWF chain of command. In setting out the DWF hierarchy involved in this lawsuit, St. Romain explained that Soniat had the power to determine whether she would obtain permanent status, although Huston determined whether she was entitled to merit increases. St. Romain said that although Soniat showed hostile and violent management practices in supervising males and females alike, his rude behavior was directed much less frequently toward the men than toward the women at DWF. Standing very close to the woman he was reprimanding, St. Romain explained, Soniat would become red-faced and would shake his finger in the woman's face. St. Romain directly experienced Soniat's *588 hostile conduct on numerous occasions and witnessed other females treated in similar fashion. She described that Soniat's tone toward the woman he was reprimanding was "demeaning ... very frightening and very distasteful," explaining that the supervisor frequently cursed at the woman during the tirade.
St. Romain stated that on one occasion, she and two other women attended a hunters' safety education workshop with the National Rifle Association (NRA) at DWF's request. During the session, although he lacked the anatomical part, Soniat made a special point of demonstrating his understanding of how a woman, who he advised was a champion shooter, physically moved her breast out of the way putting the gun barrel against her body. St. Romain said that she and the other two females found Soniat's demonstration unnecessary and inappropriate. According to St. Romain's testimony, in another NRA training session on handguns, all the females were singled out and excluded while the men were permitted to attend and participate.
St. Romain testified to Soniat's propensity to remark about the size and appearance of female employees, commenting that the female was fat or referring to her as having a "fat ass." She stated that she frequently heard Soniat advising women that they should not eat or to take up exercise. St. Romain did not recall Soniat making such comments to or about the overweight men at DWF. St. Romain said that Soniat routinely referred to females at DWF as "go f* *ks." And the deposition testimony of another female at DWF reiterated Soniat's comments to and about the appearance of females he believed to be overweight. Describing Soniat as someone who did not like women, the female DWF employee repeated Soniat's statement insinuating that women are good only for the purpose of engaging in sexual activity.
Based on review of the deposition testimony, we find ample evidence from which a reasonable trier of fact could conclude women at DWF were exposed to disadvantageous terms or conditions of employment to which men were not. Thus, we believe a reasonable trier of fact may well conclude that the harassment to which St. Romain alleges she was subjected was based on sex. Thus, the trial court erred in concluding that St. Romain failed to point out material facts on the issue of whether the harassment to which she alleges she was subjected was based on sex. Accordingly, we reverse the grant of summary judgment.[8]

IV. DECREE
That portion of the trial court's judgment which states:

*589 In addition, the Court finds that plaintiff's claims of sexual harassment are subject to the exclusive jurisdiction of the Department of Civil Service (sic) and are not properly raised in the first instance in the District Court
is reversed. That portion of the judgment which states:
The Court further finds that plaintiff's state law claims of sexual discrimination are likewise subject to the exclusive jurisdiction of the Department of Civil Service (sic) and are not properly raised in the first instance in the District Court. Therefore, Defendants' second motion for Summary Judgment requesting the dismissal of plaintiff's sexual discrimination claims is hereby GRANTED as to her claims of sexual discrimination under state law,
is reversed. And that portion of the judgment which states:
The Court concludes that plaintiff has failed to demonstrate that Dr. Soniat's behavior and actions complained of were sexually discriminatory, sexually based or sexual in nature, or severe or pervasive from a sexual standpoint. In accordance with admissions made by the plaintiff in connection with the EEOC investigation of her complaint and plaintiff's failure to raise sexual discrimination during her Civil Service appeal, the Court concludes that Dr. Soniat's actions were not sexually discriminatory and do not constitute sexual harassment. Accordingly, Defendants' ... motion for Summary Judgment requesting the dismissal of plaintiff's sexual harassment claims is hereby GRANTED,
is reversed.
This matter is remanded for further proceedings. Appeal costs in the amount of $1,692.04 are assessed against defendants, State of Louisiana, Department of Wildlife and Fisheries (DWF) and Lyle Soniat.
REVERSED AND REMANDED.
NOTES
[1] Because the trial court's judgment sets out St. Romain's claims of sexual discrimination distinctly from her claims based on allegations of sexual harassment, we refer to these claims separately.
[2] Defendants filed an appeal based on the trial court's denial of their motion for summary judgment. But an appeal does not lie from the trial court's denial of a motion for summary judgment, see La. C.C.P. art. 968, and the trial court's certification of that denial is ineffectual. Belanger v. Gabriel Chemicals, Inc., 00-0747, p. 5 (La.App. 1st Cir.5/23/01), 787 So.2d 559, 563, writ denied, 01-2289 (La.11/16/01), 802 So.2d 612. Thus, defendants' appeal of those portions of the trial court's judgment which deny their motion for summary judgment is dismissed.
[3] In their motion for summary judgment, defendants alleged that they were entitled to dismissal of St. Romain's claims of retaliatory discharge, assault, battery, abuse of rights, and intentional infliction of emotional distress. The trial court denied defendants the requested relief except on the issue of St. Romain's entitlement to recover damages for the battery claim, which was not appealed.
[4] After noting that St. Romain's "state law claims of sexual discrimination" are subject to the exclusive jurisdiction of the CSC, the judgment states, "Defendants' second motion for Summary Judgment requesting the dismissal of plaintiff's sexual discrimination claims is hereby GRANTED, as to her claims... under state law." The record shows only one pleading seeking summary judgment was filed by the defendants. In that single pleading, defendants incorporated the numerous reasons set forth in an attached memorandum among which was the issue of the district court's jurisdiction over St. Romain's state claim of sexual discrimination. At the oral argument of this matter, the parties agreed that the issue of jurisdiction was raised by the trial court on its own motion, and we find no error with this procedure. See Boudreaux v. State, Dep't of Transp. and Dev., 01-1329, p. 13 (La.2/26/02), 815 So.2d 7, 8. Moreover, we are mindful that the nature of a pleading must be determined by its substance, not by its caption. See Wiggins v. State Through Dep't of Transp. and Dev., 97-0432, p. 4 (La.App. 1st Cir.5/15/98), 712 So.2d 1006, 1008, writ not considered, 98-1652 (La.9/25/98), 726 So.2d 6. Thus, despite the designation as the grant of defendants' "second" motion for summary judgment, on appeal, we treat the matter as a review of the grant of an exception objecting to the trial court's lack of jurisdiction over the subject matter of the action. See La. C.C.P. art. 925 A(6).
[5] Louisiana Code of Civil Procedure article 1 provides, "Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2.
[6] It is undisputed that in an appeal to the CSC, St. Romain claimed that she had acquired permanent status. A referee of the CSC concluded that St. Romain did not achieve permanent status after a 12-month probationary period and denied her relief.
[7] Compartmentalizing as separate and distinct from St. Romain's entitlement to relief for the conduct she alleges constituted sexual harassment, the trial court judgment expressly recognized that St. Romain's claim of sexual discrimination under federal law was properly before district court, see Smith v. Lorch, 98-0319 (La.App. 1st Cir.4/1/99), 730 So.2d 530, and defendants do not challenge this determination although they assert that St. Romain has not pleaded entitlement to such recovery. Our review shows that St. Romain's petition does not set forth the legal conclusion that she is entitled to recovery under 42 U.S.C.A. § 2000e (Title VII). But at the oral argument of this appeal, counsel expressly represented St. Romain is pursuing the federal sexual discrimination claim. And in an amending and supplemental pleading, St. Romain incorporated into the petition the dismissal of her formally-filed charge of discrimination with the Equal Employment Opportunity Commission (EEOC). See Bernard v. LHHRA-Southwest Charity Hospital of Lafayette, 358 So.2d 653, 654 (La.App. 1st Cir. 1978) (claimant must file a charge with the EEOC to assert a Title VII claim for relief). Because Louisiana is a fact pleading jurisdiction, see Baker v. Maclay Properties Co., 94-1529, p. 18 (La.1/17/95), 648 So.2d 888, 897, St. Romain's failure to expressly state the legal conclusion that she is entitled to Title VII recovery is, therefore, not injurious to her claim. Based on the facts pleaded, St. Romain's hostile work environment sexual harassment claim under Title VII is coextensive with her sexual harassment claim under La. R.S. 23:332 et seq. Thus, the dismissal of her sexual harassment claims encompassed St. Romain's entitlement to recovery under both the federal and the state legislation.
[8] Although we recognize both Louisiana's Prohibited Discrimination Act and Title VII claims have been held to apply only to employers, see e.g., Spears v. Rountree Oldsmobile-Cadillac Co., 26,810, p. 5 (La.App.2d Cir.4/5/95), 653 So.2d 182, 184; see also McCain v. City of Lafayette, 98-1902, pp. 4-7 (La.App. 3d Cir.5/5/99), 741 So.2d 720, 722-24, writ denied, 99-1578 (La.9/17/99), 747 So.2d 563 (defendants not liable in their individual capacities for federal and state age discrimination claims), in this appeal, defendants have presented a collective defense on the propriety of the trial court's grant of summary judgment on the dismissal of St. Romain's sexual harassment claims focusing their arguments on a lack of material facts to support a prima facie case. And the issue of whether Soniat is liable in his individual capacity to St. Romain for her sexual harassment and discrimination claims asserted under La. R.S. 23:332 et seq. and/or 42 U.S.C.A. § 2000e et seq. was not specifically raised in the memorandum incorporated in their summary judgment motion. Thus, we decline to address the issue at this time. See La. C.C.P. arts. 962 and 966(A); see also La. C.C.P. art. 2164.